IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————

LA UNION DEL PUEBLO ENTERO, *et al.*,

Plaintiffs

v.

GREGORY W. ABBOTT, in his official capacity as Governor of Texas, *et al.*,

Defendants

(*See inside cover for continuation of caption*)

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

———————————————

BRIEF FOR THE UNITED STATES AS APPELLEE

———————————————

KRISTEN CLARKE
  Assistant Attorney General

BONNIE I. ROBIN-VERGEER
JONATHAN L. BACKER
ALISA C. PHILO
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 532-3528

*(Continuation of caption)*

LULAC TEXAS; VOTE LATINO; TEXAS ALLIANCE FOR RETIRED
AMERICANS; TEXAS AFT; UNITED STATES OF AMERICA,

Plaintiffs-Appellees

v.

SENATOR BRYAN HUGHES; SENATOR PAUL BETTENCOURT; BRISCO
CAIN, TEXAS REPRESENTATIVE; ANDREW MURR, TEXAS
REPRESENTATIVE,

Appellants

# TABLE OF CONTENTS

**PAGE**

STATEMENT REGARDING ORAL ARGUMENT

INTRODUCTION ................................................................................................. 1

JURISDICTIONAL STATEMENT ....................................................................... 2

STATEMENT OF THE ISSUES ............................................................................ 3

STATEMENT OF THE CASE ............................................................................... 3

SUMMARY OF ARGUMENT ............................................................................ 13

STANDARD OF REVIEW .................................................................................. 15

ARGUMENT

    I     THIS COURT LACKS JURISDICTION OVER THIS
          APPEAL ........................................................................................... 16

    II    THE DISTRICT COURT PROPERLY REJECTED THE
         LEGISLATORS' ASSERTIONS OF STATE LEGISLATIVE
         PRIVILEGE ..................................................................................... 24

         *A.*     *The State Legislative Privilege Is A Narrow, Qualified*
               *Privilege* ................................................................................. 25

         *B.*     *The State Legislative Privilege Does Not Cover Factual*
               *Information Or External Communications* ............................... 32

         *C.*     *Any Valid Assertion of State Legislative Privilege Here*
               *Must Yield To The Important Federal Interest In*
               *Enforcing Section 2 Of The VRA* ............................................ 37

    III   THE DISTRICT COURT PROPERLY REJECTED THE
         LEGISLATORS' ASSERTIONS OF ATTORNEY-CLIENT
         PRIVILEGE ..................................................................................... 48

       *A.*    *The Attorney-Client Privilege Does Not Protect Documents Shared With A Third Party Who Lacks A Common Legal Interest In Actual Or Anticipated Litigation* ............................................................. 50

       *B.*    *The Attorney-Client Privilege Does Not Protect Documents Conveying Or Soliciting Facts Rather Than Legal Advice* ............................................................. 55

CONCLUSION ..................................................................... 57

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**CASES:**                                                         **PAGE**

*Abney* v. *United States*, 432 U.S. 651 (1977) ........................................24

*ACORN* v. *County of Nassau*, No. cv 05-2301,
2007 WL 2815810 (E.D.N.Y. Sept. 25, 2007) ....................................... 33-34

*Alabama Legislative Black Caucus* v. *Alabama*, 575 U.S. 254 (2015) ..................42

*Almonte* v. *City of Long Beach*, No. cv 04-4192,
2005 WL 1796118 (E.D.N.Y. July 27, 2005)....................................................34

*Almonte* v. *City of Long Beach*, 478 F.3d 100 (2d Cir. 2007)................................36

*A-Mark Auction Galleries, Inc.* v. *American Numismatic Ass'n*,
233 F.3d 895 (5th Cir. 2000) ............................................................ 16-17, 20

*American Trucking Ass'ns, Inc.* v. *Alviti*,
14 F.4th 76 (1st Cir. 2021) ............................................................. 20-21, 30

*Angelicare, LLC* v. *St. Bernard Par.*, No. 17-7360,
2018 WL 1172947 (E.D. La. Mar. 6, 2018)....................................................38

*Baldus* v. *Brennan*, No. 11-cv-562, 11-cv-1011,
2011 WL 6122542 (E.D. Wis. Dec. 8, 2011),
2011 WL 6385645 (E.D. Wis. Dec. 20, 2011) ....................................... 11, 54

*BCR Safeguard Holding, L.L.C.* v. *Morgan Stanley Real Estate Advisor, Inc.*,
614 F. App'x 690 (5th Cir. 2015)..................................................................51

*Benisek* v. *Lamone*, 263 F. Supp. 3d 551 (D. Md. 2017),
aff'd, 241 F. Supp. 3d 566 (D. Md. 2017)....................................... 11, 41, 47

*Bethune-Hill* v. *Virginia State Bd. of Elections*,
114 F. Supp. 3d 323 (E.D. Va. 2015)........................................ 35, 41, 45, 55

*Branch* v. *Phillips Petrol. Co.*, 638 F.2d 873 (5th Cir. 1981) ..................................21

CASES (continued):                                                    PAGE

*Brnovich* v. *Democratic Nat'l Comm.*, 141 S. Ct. 2321 (2021) ........................4, 44

*Bruce* v. *Riddle*, 631 F.2d 272 (4th Cir. 1980) .......................................36

*Busbee* v. *Smith*, 549 F. Supp. 494 (D.D.C. 1982),
    aff'd, 459 U.S. 1166 (1983)........................................................ 41-42

*Bush* v. *Vera*, 517 U.S. 952 (1996) ........................................................42

*Byrum* v. *Landreth*, 566 F.3d 442 (5th Cir. 2009) ...................................24

*Cates* v. *LTV Aerospace Corp.*, 480 F.2d 620 (5th Cir. 1973) ...............21

*Cheney* v. *United States Dist. Ct. for D.C.*, 542 U.S. 367 (2004) ...........21

*Chisom* v. *Roemer*, 501 U.S. 380 (1991) ...............................................4

*Cohen* v. *Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949)................16

*Committee for a Fair & Balanced Map* v. *Illinois State Bd. of Elections*,
    No. 11-c-5065, 2011 WL 4837508 (N.D. Ill. Oct. 12, 2011)............... *passim*

*Cooper* v. *Harris*, 137 S. Ct. 1455 (2017) ..............................................42

*Corporación Insular de Seguros* v. *Garcia*, 876 F.2d 254 (1st Cir. 1989) ............20

*Doe* v. *Nebraska*, 788 F. Supp. 2d 975 (D. Neb. 2011)...........................33

*Dombrowski* v. *Eastland*, 387 U.S. 82 (1967) .......................................26

*E.E.O.C.* v. *BDO USA, L.L.P.*, 876 F.3d 690 (5th Cir. 2017) .................... 16, 48-50

*Eastland* v. *United States Servicemen's Fund*, 421 U.S. 491 (1975)............... 26-27

*El-Masri* v. *United States*, 479 F.3d 296 (4th Cir.),
    cert. denied, 552 U.S. 947 (2007)................................................19

*EPA* v. *Mink*, 410 U.S. 73 (1973) ..........................................................33

**CASES (continued):**                                                    **PAGE**

*Escobar* v. *Montee*, 895 F.3d 387 (5th Cir. 2018) ...................................24

*Ex parte Fahey*, 332 U.S. 258 (1947) ........................................21

*Favors* v. *Cuomo*, 285 F.R.D. 187 (E.D.N.Y. 2012) ........................................ 37, 41

*Fitzpatrick* v. *Bitzer*, 427 U.S. 445 (1976)..................................28

*Florida Ass'n of Rehab. Facilities, Inc.* v. *Florida Dep't of Health & Rehab. Servs.*, 164 F.R.D. 257 (N.D. Fla. 1995) ........................................34

*Garza* v. *County of L.A.*, 756 F. Supp. 1298 (C.D. Cal. 1990)................................42

*Gilby* v. *Hughs*, 471 F. Supp. 3d 763 (W.D. Tex. 2020) ............................... 9-10, 35

*Hall* v. *Louisiana*, No. 12-657, 2014 WL 1652791 (M.D. La. Apr. 23, 2014).......38

*Harding* v. *County of Dallas*, No. 3:15-cv-0131, 2016 WL 7426127 (N.D. Tex. Dec. 23, 2016)................................38

*Hodges, Grant & Kaufmann* v. *United States Dep't of Treasury*, 768 F.2d 719 (5th Cir. 1985) .................................... 50-51

*Honig* v. *E.I. duPont de Nemours & Co.*, 404 F.2d 410 (5th Cir. 1968)................17

*Hunter* v. *Underwood*, 471 U.S. 222 (1985) ..........................................41

*In re Boeing Co.*, No. 21-40190, 2021 WL 3233504 (5th Cir. July 29, 2021) .......16

*In re Depuy Orthopaedics, Inc.*, 870 F.3d 345 (5th Cir. 2017) ..............................21

*In re Franklin Nat'l Bank Secs. Litig.*, 478 F. Supp. 577 (E.D.N.Y. 1979)............38

*In re Grand Jury*, 821 F.2d 946 (3d Cir. 1987), cert. denied, 484 U.S. 1025 (1988)........................................ 33, 37

*In re Grand Jury Proceedings*, 517 F.2d 666 (5th Cir. 1975)..................................49

CASES (continued):                                                    PAGE

*In re Hubbard*, 803 F.3d 1298 (11th Cir. 2015) ............................................ *passim*

*In re Santa Fe Int'l Corp.*, 272 F.3d 705 (5th Cir. 2001) ................................. 51, 55

*Jackson Mun. Airport Auth.* v. *Bryant*, No. 3:16-cv-246,
    2017 WL 6520967 (S.D. Miss. Dec. 19, 2017) ..................................... *passim*

*Jefferson Cmty. Health Care Ctrs. Inc.* v. *Jefferson Par. Gov't*,
    849 F.3d 615 (5th Cir. 2017) ................................................................ *passim*

*League of Women Voters of Fla., Inc.* v. *Lee*,
    340 F.R.D. 446 (N.D. Fla. 2021) .................................................... 40, 44, 45

*League of Women Voters of Mich.* v. *Johnson*, No. 17-cv-14148,
    2018 WL 2335805, at *4-5 (E.D. Mich. May 23, 2018) ........................ 40-41

*Lee* v. *City of Los Angeles*, 908 F.3d 1175 (9th Cir. 2018),
    cert. denied, 139 S. Ct. 2669 (2019) ...................................................... 31, 43

*Lee* v. *Virginia State Bd. of Elections*, No. 3:15-cv-357,
    2015 WL 9461505 (E.D. Va. Dec. 23, 2015) ............................................... 35

*Marceaux* v. *Lafayette City-Par. Consol. Gov't*, 731 F.3d 488 (5th Cir. 2013) ..... 15

*McMillian* v. *Escambia Cnty.*, 748 F.2d 1037 (5th Cir. 1984) ............................... 40

*Michigan State A. Philip Randolph Inst.* v. *Johnson*, No. 16-cv-11844,
    2018 WL 1465767 (E.D. Mich. Jan. 4, 2018) ............................................. 45

*Mohawk Industries, Inc.* v. *Carpenter*, 558 U.S. 100 (2009) ......................... *passim*

*Newman* v. *Piggie Park Enters., Inc.*, 390 U.S. 400 (1968) ................................... 44

*North Carolina State Conf. of the NAACP* v. *McCrory*, Nos. 1:13-cv-658,
    1:13-cv-660, 1:13-cv-861,
    2015 WL 12683665 (M.D.N.C. Feb. 4, 2015) ............................................. 37

**CASES (continued):** **PAGE**

*OCA Greater Hous.* v. *Texas*, No. 1:15-CV-679,
   2022 WL 2019295 (W.D. Tex. June 6, 2022)..................................4

*Overby* v. *United States Fid. & Guar. Co.*, 224 F.2d 158 (5th Cir. 1955).............21

*Page* v. *Virginia State Bd. of Elections*, 15 F. Supp. 3d 657 (E.D. Va. 2014)........45

*Perez* v. *Perry*, No. SA-11-cv-360,
   2014 WL 106927 (W.D. Tex. Jan. 8, 2014).......................................... *passim*

*Periodical Publishers Serv. Bureau, Inc.* v. *Keys*,
   981 F.2d 215 (5th Cir. 1993).........................................................17

*Plain Loc. Sch. Dist. Bd. of Educ.* v. *DeWine*,
   464 F. Supp. 3d 915 (S.D. Ohio 2020)............................................9

*Powell* v. *Ridge*, 247 F.3d 520 (3d Cir.), cert. denied, 534 U.S. 823 (2001).........20

*Quarles* v. *Department of the Navy*, 893 F.2d 390 (D.C. Cir. 1990).....................33

*Rodriguez* v. *Pataki*, 280 F. Supp. 2d 89 (S.D.N.Y.),
   aff'd, 293 F. Supp. 3d 302 (S.D.N.Y. 2003)....................................... *passim*

*Shelby Cnty.* v. *Lynch*, 799 F.3d 1173 (D.C. Cir. 2015)................................. 44-45

*Smith* v. *Town of Clarkton*, 682 F.2d 1055 (4th Cir. 1982)....................................41

*Supreme Court of Va.* v. *Consumers Union of the U.S., Inc.*,
   446 U.S. 719 (1980)....................................................................26

*Swint* v. *Chambers Cnty. Comm'n*, 514 U.S. 35 (1995)................................... 23-24

*Tenney* v. *Brandhove*, 341 U.S. 367 (1951)......................................................... 26, 36

*Texaco Inc.* v. *Louisiana Land & Expl. Co.*, 995 F.2d 43 (5th Cir. 1993).............17

*Texas* v. *Holder*, No. 12-128, 2012 WL 13070060 (D.D.C. June 5, 2012).............35

**CASES (continued):**                                                    **PAGE**

*Texas* v. *United States*, 887 F. Supp. 2d 133 (D.D.C. 2012) ...................................42

*TitleMax of Tex., Inc.* v. *City of Dallas*, No. 3:21-cv-1040,
2022 WL 326566 (N.D. Tex. Feb. 3, 2022) ..................................................35

*United States* v. *BDO Seidman, LLP*, 492 F.3d 806 (7th Cir. 2007),
cert. denied, 552 U.S. 1242 (2008) ................................................................55

*United States* v. *Brewster*, 408 U.S. 501 (1972) ........................................................27

*United States* v. *Davis*, 636 F.2d 1028 (5th Cir.),
cert. denied, 454 U.S. 862 (1981) ..................................................................54

*United States* v. *El Paso Co.*, 682 F.2d 530 (5th Cir. 1982),
cert. denied, 466 U.S. 944 (1984) ..................................................................55

*United States* v. *Gillock*, 445 U.S. 360 (1980) ................................................. *passim*

*United States* v. *Helstoski*, 442 U.S. 477 (1979) ............................................. 27, 36

*United States* v. *Johnson*, 383 U.S. 169 (1966) .......................................................26

*United States* v. *Newell*, 315 F.3d 510 (5th Cir. 2002) ...................................... 51-53

*United States* v. *Nixon*, 418 U.S. 683 (1974) .................................................... 19, 36

*United States* v. *Rayburn House Office Building, Room 2113,
Washington, D.C. 20515*, 497 F.3d 654 (D.C. Cir. 2007) ............................27

*United States* v. *Tanksley*, 848 F.3d 347 (5th Cir. 2017) .......................................22

*United States* v. *Wallace*, 964 F.3d 386 (5th Cir.),
cert. denied, 141 S. Ct. 910 (2020) ................................................................30

*Upjohn Co.* v. *United States*, 449 U.S. 383 (1981) ......................................... 48, 55

*Vantage Health Plan, Inc.* v. *Willis-Knighton Med. Ctr.*,
913 F.3d 443 (5th Cir. 2019) .........................................................................23

**CASES (continued):** PAGE

*Veasey* v. *Abbott*, 830 F.3d 216 (5th Cir. 2016) (en banc) .....................................41

*Veasey* v. *Perry*, No. 2:13-cv-193,
2014 WL 1340077 (S.D. Tex. Apr. 3, 2014)........................................ *passim*

*Village of Arlington Heights* v. *Metropolitan Hous. Dev. Corp.*,
429 U.S. 252 (1977)................................................................. 29, 42

*Whole Woman's Health* v. *Smith*, 896 F.3d 362 (5th Cir. 2018),
cert. denied, 139 S. Ct. 1170 (2019)................................................. 15, 22-23

*Will* v. *Hallock*, 546 U.S. 345 (2006) ................................................. 14, 17, 19-20

*Willy* v. *Administrative Rev. Bd.*, 423 F.3d 483 (5th Cir. 2005).............................19

*Yohey* v. *Collins*, 985 F.2d 222 (5th Cir. 1993).........................................21

## CONSTITUTIONS AND STATUTES:

U.S. Const., Art. I, § 6, Cl. 1................................................................9, 26

Tex. Const. Art. IV, §16 .....................................................................10

28 U.S.C. 1291................................................................................2, 16

28 U.S.C. 1292(b) .............................................................................18

28 U.S.C. 1331..................................................................................2

28 U.S.C. 1343..................................................................................2

42 U.S.C. 1983.................................................................................29

42 U.S.C. 2000a-3(b).........................................................................45

52 U.S.C. 10101................................................................................5

52 U.S.C. 10301................................................................................4

**STATUTES (continued):**                                                                     **PAGE**

52 U.S.C. 10508.............................................................................4

**RULES:**

Fed. R. Civ. P. 26(b)(1)................................................39

Fed. R. Evid. 401(a)....................................................39

## STATEMENT REGARDING ORAL ARGUMENT

The United States does not object to oral argument if the Court believes it would be helpful to resolve this appeal.

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 22-50435

LULAC TEXAS, *et al.*,

Plaintiffs-Appellees

v.

SENATOR BRYAN HUGHES, *et al.*,

Appellants

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

_____

BRIEF FOR THE UNITED STATES AS APPELLEE

_____

## INTRODUCTION

This is an appeal from the district court's grant of the motion to compel filed by plaintiffs LULAC Texas, Vote Latino, Texas Alliance for Retired Americans, and Texas AFT (together, LULAC) seeking documents withheld by Texas Senators Bryan Hughes and Paul Bettencourt, and Texas Representatives Briscoe Cain and Andrew Murr (together, the Legislators). The Legislators have asserted the state legislative privilege, attorney-client privilege, and other evidentiary privileges as bases for withholding these documents.

The United States did not join LULAC's motion to compel. Nevertheless, the United States submits this brief as appellee because the Legislators' sweeping view of the state legislative and attorney-client privileges would shroud in secrecy nearly all direct evidence of a legislature's motivations for enacting legislation, imperiling enforcement of federal statutes like Section 2 of the Voting Rights Act of 1965 (VRA) that prohibit laws enacted with a discriminatory purpose. As an initial matter, this Court lacks jurisdiction to review the district court's interlocutory discovery order at issue here. But in any event, Supreme Court and Fifth Circuit precedent squarely foreclose the Legislators' interpretations of the legislative and attorney-client privileges.

## JURISDICTIONAL STATEMENT

LULAC has alleged violations of the VRA and the United States Constitution, and the district court has jurisdiction over their complaint under 28 U.S.C. 1331 and 1343. The court granted a motion to compel filed by LULAC on May 25, 2022 (ROA.10397), and the Legislators appealed the next day (ROA.10450). Although the Legislators assert that this Court has appellate jurisdiction under 28 U.S.C. 1291 (see Br. 2), they are wrong. This Court should dismiss their appeal for lack of jurisdiction because interlocutory adverse rulings

on the evidentiary privileges at issue here are not appealable under the collateral-order doctrine.  See Part I, *infra*.[1]

## STATEMENT OF THE ISSUES

1.  Whether this Court has jurisdiction to review a non-final order requiring production of documents over assertions of the attorney-client and state legislative privileges.

2.  Whether the district court properly held that the state legislative privilege either does not apply or yields where it is otherwise applicable with respect to the documents that LULAC sought in its motion to compel.

3.  Whether the district court properly held that the attorney-client privilege does not apply with respect to documents that either were shared with a third party or concerned underlying factual information.

## STATEMENT OF THE CASE

1.  This appeal is from a district court order granting LULAC's motion to compel the Legislators to produce documents that will shed light on the legislative motives behind S.B. 1, Texas's recently enacted voting law that, among other features, restricts eligible voters' ability to cast a ballot and have that ballot

---

[1] "Br. __" refers to pages of appellants' opening brief.  "ROA.___" refers to the electronic record on appeal.  "Doc. __" refers to the docket entry number for filings in consolidated case No. 5:21-cv-844 (W.D. Tex.) that are not included in the ROA.

counted.  The named defendants include the State of Texas, state executive branch officials, and local election officials.[2]

LULAC alleges that S.B. 1 violates Sections 2 and 208 of the VRA, 52 U.S.C. 10301 and 10508, and the First and Fourteenth Amendments of the United States Constitution.  ROA.6578-6587.  With respect to its Section 2 claim, LULAC specifically alleges that "a racially discriminatory purpose was a motivating factor in the passage of SB 1" and that the statute was "intended to disproportionately restrict access to the franchise for Black and Hispanic voters."  ROA.6578-6579.[3] Like LULAC, the United States alleges that S.B. 1 violates Section 208 of the VRA.  ROA.4223.[4]  In addition, the United States alleges that S.B. 1 violates

---

[2]  Six challenges to S.B. 1 have been consolidated in the district court:  *La Unión del Pueblo Entero* v. *Abbott*, No. 5:21-cv-844 (W.D. Tex.) (*LUPE*) (lead case); *OCA-Greater Houston* v. *Scott*, No. 1:21-cv-780 (W.D. Tex.); *Houston Area Urban League* v. *Abbott*, No. 5:21-cv-848 (W.D. Tex.); *LULAC Texas* v. *Scott*, No. 1:21-cv-786 (W.D. Tex.); *Mi Familia Vota* v. *Abbott*, No. 5:21-cv-920 (W.D. Tex.); and *United States* v. *Texas*, No. 5:21-cv-1085 (W.D. Tex.).

[3]  Section 2 prohibits both practices that are enacted for a discriminatory purpose and those that have a discriminatory result.  See *Brnovich* v. *Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2334, 2348-2349 (2021) (analyzing purpose claim separately from results claim); *Chisom* v. *Roemer*, 501 U.S. 380, 394 n.21, 404 (1991).

[4]  On July 12, 2022, the district court found certain Section 208 claims to be moot in light of a recent decision in another case, *OCA Greater Hous.* v. *Texas*, No. 1:15-CV-679, 2022 WL 2019295 (W.D. Tex. June 6, 2022).  Doc. 444, at 2 n.3.  The United States is reviewing that order.

Section 101 of the Civil Rights Act of 1964, 52 U.S.C. 10101.  ROA.4223-4224.

Both LULAC and the United States seek declaratory and injunctive relief.

ROA.4225, 6588-6599.

2.  On December 15, 2021, LULAC served third-party subpoenas on the

Legislators, the sponsors of S.B. 1.  ROA.9128-9198.  The subpoenas sought,

among other things, documents and communications from the Legislators

"concerning claims of criminal conduct in Texas elections, the anticipated effects

of SB 1 and related election law bills, and the [Legislators'] communications with

third-party groups about the law."  ROA.9097-9098; see also, *e.g.*, ROA.9137-

9140.  As LULAC explained, discovery into the legislature's "purpose" is "highly

relevant" to their claim that the Texas legislature enacted S.B. 1 with

discriminatory intent.  ROA.9097.

Because the United States' claims below do not require proof of legislative

intent, it did not join LULAC's document requests in this particular instance.  But

the United States has moved to enforce discovery subpoenas it has issued to third-

party Texas legislators in other cases in which it has alleged that redistricting plans

or other election-related laws have a discriminatory purpose.[5]

---

[5] See, *e.g.*, U.S. Mot. to Enforce Third-Party Subpoenas *Duces Tecum*, *LULAC* v. *Abbott*, No. 3:21-cv-259 (W.D. Tex. June 17, 2022), ECF No. 351; *Veasey* v. *Perry*, No. 2:13-cv-193, 2014 WL 1340077, at *2-4 (S.D. Tex. Apr. 3,

(continued…)

The Legislators eventually produced several hundred documents after negotiations with LULAC (ROA.9099), but they continued to withhold more than 700 documents, asserting state legislative privilege, attorney-client privilege, work-product protection, and investigative privilege.  See ROA.9285-9350 (Legislators' privilege log).  After subsequent attempts to resolve the dispute failed, LULAC filed a motion to compel production.  ROA.9096-9120.  But rather than seeking all withheld documents, LULAC limited its motion to "139 highly relevant documents" that, based on the descriptions in the Legislators' privilege log, "appear most likely to be probative of the Lawmakers' intent in enacting SB 1," as well as additional documents that LULAC contended either were not privileged or over which any applicable privilege had been waived.  ROA.9100-9101, 9103.  The Legislators opposed the motion.  ROA.9440-9466; see also ROA.9815-9832 (LULAC's reply).

3.  After holding a hearing on LULAC's motion (ROA.10616-10677) and reviewing the requested documents *in camera*, the district court issued an order on May 25, 2022, requiring production of all but one of the requested documents (ROA.10397, 10449).

---

(…continued)
2014) (granting in part the United States' motion to compel production documents over legislators' assertion of legislative privilege).

a. First, the district court set out the fundamental legal principles governing assertions of state legislative privilege. The court explained that the privilege is an evidentiary privilege governed by federal common law, as applied through Federal Rule of Evidence 501. ROA.10383. The court further described the privilege as "personal" because it can be "waived or asserted by [an] individual legislator." ROA.10384. In addition, the court stressed that the legislative privilege is "qualified" (ROA.10385 (citing *United States* v. *Gillock*, 445 U.S. 360, 373 (1980); *Jefferson Cmty. Health Care Ctrs. Inc.* v. *Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017))), and that it "must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth" (ROA.10385 (quoting *Jefferson*, 849 F.3d at 624)). Based on these principles, the court explained that the privilege applies to "any documents or information that contains or involves opinions, motives, recommendations or advice about legislative decisions between legislators and their staff." ROA.10384 (quoting *Jackson Mun. Airport Auth.* v. *Bryant*, No. 3:16-cv-246, 2017 WL 6520967, at *7 (S.D. Miss. Dec. 19, 2017)).

b. Of the 226 documents over which the Legislators asserted state legislative privilege, the district court first made a threshold assessment that, with respect to more than half the documents, the privilege either did not apply in whole

or in part, or it had been waived.  ROA.10384-10386; see ROA.10398, 10403-10405, 10407-10408, 10413-10415, 10419-10420, 10422, 10424-10449.

To start, the district court explained that the state legislative privilege does not apply to those documents (or portions thereof) that contain only "factually based information used in the decision-making process or disseminated to legislators or committees" or "the materials and information available [to lawmakers] at the time a decision was made."  ROA.10384 (brackets in original) (quoting *Committee for a Fair & Balanced Map* v. *Illinois State Bd. of Elections*, No. 11 c 5065, 2011 WL 4837508, at *9 (N.D. Ill. Oct. 12, 2011)); see also ROA.10407, 10413-10415, 10420, 10422, 10434, 10436.

The district court then held that the state legislative privilege had been "waived" with respect to the Legislators' communications with non-legislative third parties, including communications between the Legislators and "third-party organizations, constituents, lobbyists, etc.," and between the Legislators and executive branch offices, such as the Office of the Attorney General (OAG), Secretary of State, and Lieutenant Governor.  ROA.10386-10389; see also ROA.10398, 10403-10405, 10407-10408, 10413-10415, 10419-10420, 10422, 10424-10449.[6]

---

[6] Although the district court discussed the state legislative privilege's applicability to the Legislators' communications with third parties in terms of

(continued…)

Taking these one by one, the district court first explained that the Legislators waived the state legislative privilege with respect to their communications with "parties outside the legislature, such as party leaders and lobbyists."  ROA.10386. (citing, *e.g.*, *Gilby* v. *Hughs*, 471 F. Supp. 3d 763, 767 (W.D. Tex. 2020); *Perez* v. *Perry*, No. SA-11-cv-360, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014) (three-judge court)).  Although the Legislators cited several cases that held that the privilege covers such communications with third parties, the court found those decisions "unpersuasive" because they relied on cases concerning application of the legislative privilege that extends to Members of Congress through the U.S. Constitution's Speech and Debate Clause, U.S. Const., Art. I, § 6, Cl. 1. ROA.10387-10388.  As the court emphasized, "[c]ase law within the Fifth Circuit is clear that state legislators waive the legislative privilege when they communicate with outsiders."  ROA.10388 (citing *Gilby*, 471 F. Supp. 3d at 767; *Perez*, 2014 WL 106927, at *2).

The district court next held that the same rule applies to the Legislators' communications with executive branch officials—including members of OAG, the Secretary of State, and the Lieutenant Governor.  ROA.10388 (quoting *Perez*, 2014

---

(…continued)
"waiver" (ROA.10386), such communications are better understood as falling outside the privilege's scope.  See, *e.g.*, *Plain Loc. Sch. Dist. Bd. of Educ.* v. *DeWine*, 464 F. Supp. 3d 915, 921 (S.D. Ohio 2020).

WL 106927, at *2). As the court explained, expanding the state legislative privilege to protect legislators' communications with the executive branch is "inconsistent with the purposes of the privilege: to protect the legislative branch from 'intimidation' by the executive and judicial branches." ROA.10388 (citing *Gilby*, 471 F. Supp. 3d at 767). Again, the court rejected the relevance of cases cited by the Legislators, which hold that state legislators are immune from suit when performing legislative functions. Those cases, the court reasoned, are inapposite because "legislative immunity and legislative privilege are distinct concepts." ROA.10389 (citing *Rodriguez* v. *Pataki*, 280 F. Supp. 2d 89, 95 (S.D.N.Y.), aff'd, 293 F. Supp. 3d 302 (S.D.N.Y. 2003)). And although the court recognized that Texas's Lieutenant Governor performs specific legislative functions enumerated in the State's constitution, see Tex. Const. Art. IV, §16, the court determined that the Legislators had not demonstrated that any of their communications with the Lieutenant Governor's office "involved any of these legislative functions." ROA.10390-10391.

c. After making that threshold assessment regarding the state legislative privilege's scope, the district court held that the privilege normally would apply to "several internal documents such as notes and drafts of election legislation as well as communications between the State Legislators and their staff." ROA.10391-10392. Accordingly, consistent with the widely accepted approach of other district

courts in this Circuit, the court applied the five-factor test set forth in *Rodriguez*,

280 F. Supp. 2d at 100-101, to determine whether the legislative privilege should

yield where it applies. ROA.10385. Those factors include:

> (i) the relevance of the evidence sought to be protected; (ii) the
> availability of other evidence; (iii) the 'seriousness' of the litigation
> and the issues involved; (iv) the role of the government in the
> litigation; and (v) the possibility of future timidity by government
> employees who will be forced to recognize that their secrets are
> violable.

ROA.10385 (quoting *Rodriguez*, 280 F. Supp. 2d at 101).

After doing so, the district court determined that "the need for accurate fact

finding" in this case "outweighs any chill to the legislature's deliberations" that

disclosure of the privileged documents would cause, given the "important federal

interest[]" in "protecting the fundamental right to vote." ROA.10393 (citing

*Baldus* v. *Brennan*, Nos. 11-cv-562, 11-cv-1011, 2011 WL 6122542, at *2 (E.D.

Wis. Dec. 8, 2011)). Accordingly, the court concluded that "the principle of

comity, which undergirds the protection of legislative independence, yields."

ROA.10393 (quoting *Benisek* v. *Lamone*, 263 F. Supp. 3d 551, 555 (D. Md.), aff'd,

241 F. Supp. 3d 566 (D. Md. 2017)).

d. The district court also rejected the Legislators' assertion of attorney-

client privilege over all but one of 32 documents. ROA.10394-10395, 10397; see

also ROA.10419-10420, 10434-10449. The court identified 25 documents for

which the Legislators had waived any attorney-client privilege because of

disclosure to a third party (ROA.10419-10420, 10436-10447), and one document for which the Legislators had failed to establish an attorney-client relationship between the parties (ROA.10448). All 26 of these documents had been sent via email to Alix Morris, the Deputy General Counsel to the Lieutenant Governor (ROA.9514).[7] See ROA.10419-10420, 10436-10448. The court rejected the Legislators' argument that the recipients had "a common legal interest in drafting legislation" that saved these documents from disclosure. ROA.10394-10395. In addition, the court identified five documents for which "the attorney-client privilege does not apply" because the "communication was not for the purpose of obtaining legal advice." ROA.10434-10435, 10447-10449. "As these communications relayed facts, not legal advice," the court explained, "they are not privileged." ROA.10395. The court upheld the Legislators' assertion of the attorney-client privilege as to one document. ROA.10449.

4. The Legislators appealed. ROA.10450. They also moved for a stay of the order pending appeal (ROA.10458-10459), which the district court granted "[o]nly because the motion for stay [was] unopposed" (ROA.10461). The court admonished that the "vast majority" of the documents at issue here "cannot be validly claimed as privileged," and even if certain sections of a page were arguably

---

[7] Because the same third party (Alix Morris) received all 26 of these documents, the United States handles them together for purposes of the analysis below.

privileged, "the overwhelming number of pages of documents are either public documents or documents prepared by third parties or shared with third parties." ROA.10461.[8]

## SUMMARY OF ARGUMENT

1. As an initial matter, this Court lacks jurisdiction to review the district court's interlocutory order granting LULAC's motion to compel production of documents withheld by the Legislators. That is established by *Mohawk Industries, Inc.* v. *Carpenter*, 558 U.S. 100 (2009), which held that non-final, adverse rulings on attorney-client privilege are not reviewable under the collateral-order doctrine. *Id.* at 103. *Mohawk* squarely settles the jurisdictional question with respect to the Legislators' appeal of the district court's attorney-client privilege rulings.

*Mohawk*'s reasoning also bars immediate review of the district court's rulings rejecting the Legislators' assertions of state legislative privilege. Like the attorney-client privilege, the state legislative privilege is grounded not in constitutional text or principles but is recognized only as a matter of federal common law. *Jefferson Cmty. Health Care Ctrs., Inc.* v. *Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017). Deferring review until final judgment of adverse

---

[8] The district court also rejected the Legislators' assertions of work-product protection and investigative privilege. See ROA.10395-10396. On appeal, the Legislators have expressly waived appeal of the court's ruling on their assertions of investigative privilege (Br. 13 n.6), and their opening brief does not address the court's ruling on their assertions of work-product protection.

state legislative privilege rulings therefore does not "'imperil a substantial public interest' or 'some particular value of a high order.'" *Mohawk*, 558 U.S. at 107 (quoting *Will* v. *Hallock*, 546 U.S. 345, 352-353 (2006)).

This Court should therefore dismiss this appeal.

2.  If, however, this Court finds that it has jurisdiction, it should reject the Legislators' extreme characterizations of the privileges at issue.  Contrary to their assertions, the state legislative privilege is not an absolute privilege, but a narrow, qualified privilege that "yields" where "important federal interests are at stake." *United States* v. *Gillock*, 445 U.S. 360, 373 (1980); see also *Jefferson*, 849 F.3d at 624.  The legislative privilege's function is merely to ensure "candor in  *  *  * *internal exchanges*."  *Gillock*, 445 U.S. at 373 (emphasis added) (reasoning by analogy to the executive privilege).  Thus, the district court correctly held that the privilege does not cover legislators' communications with individuals outside the legislature or the factual information underlying legislators' decision-making process.  And because proof of discriminatory legislative intent is an essential element that LULAC has alleged under Section 2 of the VRA, the court did not abuse its discretion in holding that the legislative privilege must yield here for the purposes of discovery.  That ruling, however, is not a final determination regarding the ultimate admissibility of any documents at issue.

3.  Nor can the Legislators rely on the attorney-client privilege to protect communications that either lack confidentiality, or that convey or solicit factual information.  The attorney-client privilege does not protect 26 of the contested documents shared with Alix Morris, a third party who represented the Lieutenant Governor and who did not share a common interest in actual or anticipated litigation with the Legislators.  This Court should reject the Legislators' sweeping argument that they *always* share a common interest with the Lieutenant Governor, among others, when working on election-based legislation.  Separately, the attorney-client privilege does not protect another five contested documents that conveyed or solicited factual information, rather than legal advice, from other sources.

## STANDARD OF REVIEW

The abuse-of-discretion standard governs this Court's review of discovery orders, which "are generally affirmed unless they are arbitrary or clearly unreasonable." *Whole Woman's Health* v. *Smith*, 896 F.3d 362, 369 (5th Cir. 2018) (internal quotation marks and citation omitted), cert. denied, 139 S. Ct. 1170 (2019).  "The district court's legal conclusion should be reviewed *de novo*, and its factual findings should not be disturbed unless they are clearly erroneous." *Ibid.* (quoting *Marceaux* v. *Lafayette City-Par. Consol. Gov't*, 731 F.3d 488, 491 (5th Cir. 2013)).  This Court has described "[t]he application of the attorney-client

privilege" as "a question of fact," *E.E.O.C.* v. *BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) (citation omitted), which it reviews for clear error, *In re Boeing Co.*, No. 21-40190, 2021 WL 3233504, at *1 (5th Cir. July 29, 2021) (per curiam).

## ARGUMENT

### I

### THIS COURT LACKS JURISDICTION OVER THIS APPEAL

This Court has no jurisdiction to review the district court's interlocutory order granting LULAC's motion to compel, over the Legislators' assertions of the attorney-client and state legislative privileges.  The collateral-order doctrine does not apply.

Under 28 U.S.C. 1291, this Court has jurisdiction to review "final decisions of the district court[]."  Final decisions "typically are ones that trigger the entry of judgment," but "they also include a small set of prejudgment orders that are 'collateral to' the merits of an action and 'too important' to be denied immediate review." *Mohawk Indus., Inc.* v. *Carpenter*, 558 U.S. 100, 103 (2009) (quoting *Cohen* v. *Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)).  The collateral-order doctrine permits review of an order that "(1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment." *A-Mark Auction Galleries, Inc.* v. *American Numismatic Ass'n*, 233

F.3d 895, 898 (5th Cir. 2000). It is a "well-settled rule" that the collateral-review

doctrine generally does not allow for review of "discovery orders." *Id.* at 899; see,

*e.g.*, *Texaco Inc.* v. *Louisiana Land & Expl. Co.*, 995 F.2d 43, 44 (5th Cir. 1993);

*Periodical Publishers Serv. Bureau, Inc.* v. *Keys*, 981 F.2d 215, 217 (5th Cir.

1993); *Honig* v. *E.I. duPont de Nemours & Co.*, 404 F.2d 410, 410 (5th Cir. 1968).

1. The Supreme Court's decision in *Mohawk* validates this Court's rejection

of most immediate appeals of discovery orders, and bars collateral review of the

district court's rejection of the Legislators' assertions of attorney-client privilege

here. *Mohawk* held that "disclosure orders adverse to the attorney-client privilege

[do not] qualify for immediate appeal under the collateral order doctrine." 558

U.S. at 103. In reaching that conclusion, the Court stated that "the decisive

consideration" in determining whether a "class of claims, taken as a whole" is

reviewable under the collateral-order doctrine "is whether delaying review until the

entry of final judgment 'would imperil a substantial public interest' or 'some

particular value of a high order.'" *Id.* at 107 (quoting *Will* v. *Hallock*, 546 U.S.

345, 352-353 (2006)).

Applying that standard, the Supreme Court held that the "limited benefits"

of allowing collateral review of adverse rulings on attorney-client privilege

"simply cannot justify the likely institutional costs." *Mohawk*, 558 U.S. at 112.

That is because "postjudgment appeals generally suffice to protect the rights of

litigants and ensure the vitality of the attorney-client privilege." *Id.* at 109.
Moreover, the Court explained, "deferring review until final judgment does not
meaningfully reduce the *ex ante* incentives for full and frank consultations between
clients and counsel" because attorneys and their clients are unlikely to structure
their communications based on "the remote prospect of an erroneous disclosure
order, let alone on the timing of a possible appeal." *Id.* at 109-110. As the Court
reasoned, "[w]hether or not immediate collateral order appeals are available,
clients and counsel must account for the possibility that they will later be required
by law to disclose their communications for a variety of reasons." *Id.* at 110.

Litigants, *Mohawk* made clear, can address "a particularly injurious or novel
privilege ruling" (1) by asking the district court to certify (and the court of appeals
to accept) an interlocutory appeal under 28 U.S.C. 1292(b); (2) petitioning the
court of appeals for a writ of mandamus; or (3) "defy[ing] a disclosure order and
incur[ring] court-imposed sanctions," including, potentially, a contempt citation,
which is immediately appealable. 558 U.S. at 110-111.

Accordingly, under *Mohawk*, which controls, this Court has no jurisdiction
to hear the Legislators' challenge to the district court's order granting the motion to
compel with respect to documents over which they asserted attorney-client
privilege.

2. *Mohawk*'s reasoning also bars collateral review of the district court's rejection of the Legislators' assertions of state legislative privilege. Like the attorney-client privilege, the state legislative privilege "is an evidentiary privilege, 'governed by federal common law, as applied through Rule 501 of the Federal Rules of Evidence.'" *Jefferson Cmty. Health Care Ctrs., Inc.* v. *Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017) (quoting *Perez* v. *Perry*, No. SA-11-cv-360, 2014 WL 106927, at *1 (W.D. Tex. Jan. 8, 2014) (three-judge court)); cf. *Willy* v. *Administrative Rev. Bd.*, 423 F.3d 483, 495 (5th Cir. 2005) (recognizing that "the federal common law of attorney-client privilege" applies to "claims [that] arise under federal law").

The state legislative privilege is therefore unlike other privileges that vindicate "particular value[s] of high order" and are therefore sufficiently important to justify collateral-order review. *Mohawk*, 558 U.S. at 107 (quoting *Will*, 546 U.S. at 352). For example, the Presidential communications privilege is "inextricably rooted in the separation of powers under the Constitution." *United States* v. *Nixon*, 418 U.S. 683, 708 (1974). The state-secrets privilege similarly "performs a function of constitutional significance, because it allows the executive branch to protect information whose secrecy is necessary to its military and foreign-affairs responsibilities." *El-Masri* v. *United States*, 479 F.3d 296, 303 (4th Cir.), cert. denied, 552 U.S. 947 (2007). No such value is at stake here, and

indeed, the Supreme Court has specifically held that "the separation of powers doctrine[] gives no support to the grant of a privilege to state legislators." *United States* v. *Gillock*, 445 U.S. 360, 370 (1980).

The absence of such constitutional values also means that, like an adverse decision on attorney-client privilege, an adverse decision on the state legislative privilege is not "effectively unreviewable on appeal from a final judgment." *A-Mark Auction Galleries, Inc.*, 233 F.3d at 898. If the Legislators are ever faced with "a particularly injurious or novel privilege ruling," they have the same options as the petitioner in *Mohawk*: they may take a certified appeal, petition for a writ of mandamus, or incur contempt. See *Mohawk*, 558 U.S. at 110-111. Given those alternatives—and the nature of state legislative privilege—"delaying review until the entry of final judgment" of the "class of" state legislative privilege claims does not "'imperil a substantial public interest' or 'some particular value of a high order.'" *Id.* at 107 (quoting *Will*, 546 U.S. at 352-353).

Thus, unsurprisingly, other courts of appeals have held that adverse state legislative privilege rulings in discovery disputes are not reviewable under the collateral-order doctrine. See *American Trucking Ass'ns, Inc.* v. *Alviti*, 14 F.4th 76, 84 (1st Cir. 2021); *Corporación Insular de Seguros* v. *Garcia*, 876 F.2d 254, 256-258 (1st Cir. 1989); *Powell* v. *Ridge*, 247 F.3d 520, 526-527 (3d Cir.), cert. denied, 534 U.S. 823 (2001). The Eleventh Circuit held otherwise in *In re*

*Hubbard*, 803 F.3d 1298 (11th Cir. 2015), but it expressly declined to apply

*Mohawk*'s reasoning to the state legislative privilege and therefore does not

provide persuasive guidance on how the collateral-order doctrine applies in this

context. *Id.* at 1306-1307.[9]

To be sure, a line of pre-*Mohawk* cases in this Circuit held that "immediate

appeal by a governmental entity" is permitted "where the government is not a party

to the lawsuit and asserts some governmental privilege to resist release of the

subpoenaed material." *Branch* v. *Phillips Petrol. Co.*, 638 F.2d 873, 878-879 (5th

Cir. 1981); see also, *e.g.*, *Cates* v. *LTV Aerospace Corp.*, 480 F.2d 620, 622 (5th

Cir. 1973); *Overby* v. *United States Fid. & Guar. Co.*, 224 F.2d 158, 162 (5th

Cir. 1955). But none of those cases concerned the state legislative privilege or

undertook anything like the categorical balancing approach required by *Mohawk*.

---

[9] Although the First Circuit held in *Alviti* that a denial of a motion to quash a subpoena is not reviewable under the collateral-order doctrine, the court exercised its mandamus jurisdiction to review state officials' assertion of state legislative privilege in that case. 14 F.4th at 84-85. Here, however, the Legislators did not raise mandamus as an alternative basis for appellate jurisdiction in their opening brief (see Br. 2-3) and thereby forfeited the opportunity to request such relief. See *Yohey* v. *Collins*, 985 F.2d 222, 225 (5th Cir. 1993). In any event, the "drastic and extraordinary" remedy of mandamus relief, *Cheney* v. *United States Dist. Ct. for D.C.*, 542 U.S. 367, 380-381 (2004) (quoting *Ex parte Fahey*, 332 U.S. 258, 259 (1947)), is not warranted here. Among other things, the Legislators cannot establish that the district court's ruling was a "clear abuse[] of discretion that produce[d] patently erroneous results," *In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 351 (5th Cir. 2017) (citation omitted), as mandamus relief requires. See Parts II & III, *infra*.

The *Branch* line of cases is therefore no longer good law and cannot guide this panel. See *United States* v. *Tanksley*, 848 F.3d 347, 350 (5th Cir. 2017) ("If * * * a Supreme Court decision expressly or implicitly overrules one of our precedents, we have the authority and obligation to declare and implement this change in the law." (internal quotation marks and citation omitted)); see also Order at 6 n.1, *LULAC* v. *Abbott*, No. 22-50407 (5th Cir. May 20, 2022) (noting Judge Willett's concurrence in a motions panel's denial of Texas legislators' motion to stay a district court order rejecting their assertions of legislative privilege, "because he is unconvinced that we have jurisdiction under the collateral order doctrine" (citing *Mohawk*, 558 U.S. at 108)).

The Legislators cite this Court's decision in *Whole Woman's Health* v. *Smith*, 896 F.3d 362 (5th Cir. 2018), cert. denied, 139 S. Ct. 1170 (2019) (*WWH*), for the proposition that orders enforcing subpoenas against third parties are reviewable under the collateral order doctrine. Br. 2-3. But *WWH* is inapposite. That case involved a "practically *sui generis*" discovery order requiring a religious group to disclose its communications in response to a third-party subpoena over assertions of a First Amendment privilege that went "to the heart of the constitutional protection of religious belief and practice as well as citizens' right to advocate sensitive policies in the public square." *WWH*, 896 F.3d at 368. Thus, as this Court later emphasized, *WWH* did not hold that "third-party status alone,

absent some constitutional or other issue that calls into question the 'general familiarity of courts with standards governing [the dispute],' * * * suffice[s] to invoke the collateral order doctrine." *Vantage Health Plan, Inc.* v. *Willis-Knighton Med. Ctr.*, 913 F.3d 443, 450 n.2 (5th Cir. 2019) (brackets in original; quoting *WWH*, 896 F.3d at 368); see also Order at 6 n.1, *LULAC* v. *Abbott* No. 22-50407 (5th Cir. May 20, 2022) (noting that Judge Willett found *WWH* distinguishable "because it concerned a very different type of privilege, one resting on the First Amendment"). Because the state legislative privilege is a qualified privilege grounded in common law rather than constitutional text or structure, it simply does not raise the sensitive and weighty issues that the discovery order in *WWH* posed.

Finally, even if the Legislators' third-party distinction had merit in other circumstances, it does not here. The Legislators are hardly strangers to this litigation. They are officers of the State of Texas, and they are represented by the Texas Attorney General, who also represents the State and the state officials who are named defendants.

3. Even if this Court determined that it has jurisdiction to review the Legislators' assertions of state legislative privilege, it would still lack jurisdiction to review their assertions of attorney-client privilege under *Mohawk*. Pendent claims are generally appealable "if, and only if, they too fall within *Cohen*'s collateral-order exception to the final-judgment rule." *Swint* v. *Chambers Cnty.*

*Comm'n*, 514 U.S. 35, 49 (1995) (quoting *Abney* v. *United States*, 432 U.S. 651, 663 (1977)). In "rare and unique circumstances," *Byrum* v. *Landreth*, 566 F.3d 442, 449 (5th Cir. 2009) (citation omitted), however, this Court will exercise pendent jurisdiction where either: (1) "the pendent decision is 'inextricably intertwined' with the decision over which the appellate court otherwise has jurisdiction"; or (2) "review of the former decision [is] necessary to ensure meaningful review of the latter decision," *Escobar* v. *Montee*, 895 F.3d 387, 391-392 (5th Cir. 2018) (brackets in original) (quoting *Swint*, 514 U.S. at 51). The Legislators' assertion of attorney-client privilege fits into neither of those "carefully circumscribed" categories. *Id.* at 391. Legislative privilege and attorney-client privilege have distinct elements, and, as discussed above, alternative avenues remain available for review of adverse rulings on attorney-client privilege.

Accordingly, this Court should dismiss the Legislators' appeal in its entirety for lack of jurisdiction.

## II

## THE DISTRICT COURT PROPERLY REJECTED THE LEGISLATORS' ASSERTIONS OF STATE LEGISLATIVE PRIVILEGE

Even if this Court has appellate jurisdiction, the district court properly rejected the Legislators' assertions of state legislative privilege. Contrary to the Legislators' breathtaking claim to an absolute privilege in private civil litigation

protecting them from discovery into their motives for their legislative acts, the state legislative privilege is a narrow, qualified privilege. The court properly determined that this limited privilege does not encompass factual information or communications between legislators and individuals outside the legislature. Moreover, the court did not abuse its discretion in determining that the Legislators' otherwise valid assertions of legislative privilege with respect to other documents must yield to the discovery request here, where proof of the legislature's discriminatory intent is an essential prerequisite to enforcement of a federal civil-rights statute.

A.      *The State Legislative Privilege Is A Narrow, Qualified Privilege*

The Legislators' sweeping and incorrect construction of the state legislative privilege stems from their conflation of that privilege with two quite "distinct" legal concepts: (1) the legislative privilege available to Members of Congress through the U.S. Constitution's Speech and Debate Clause; and (2) legislative immunity from suit available to both federal and state lawmakers. ROA.10386-10390; see Br. 19-21, 32-34. Both the Supreme Court and this Court have rejected the Legislators' preferred construction of the state legislative privilege in favor of a narrow, qualified privilege. See *United States* v. *Gillock*, 445 U.S. 360, 373 (1980); *Jefferson Cmty. Health Care Care Ctrs. Inc.* v. *Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017).

1. The Speech or Debate Clause is not at issue in this case because that provision, "by its terms[,] is confined to *federal* legislators." *Gillock*, 445 U.S. at 374 (emphasis added). The Clause provides that "for any Speech or Debate in either House" of Congress, Senators and Representatives "shall not be questioned in any other place." U.S. Const. Art. I, § 6, Cl. 1. Although the Clause's plain text concerns only oral statements made on the House or Senate floor, the Supreme Court has interpreted the provision "broadly to effectuate its purposes," which are (1) to "ensur[e] the independence of the legislature" and (2) to "reinforce[e] the separation of powers so deliberately established by the Founders." *United States* v. *Johnson*, 383 U.S. 169, 178-180 (1966). Reflecting that broad construction, the Speech or Debate Clause immunizes Members of Congress from "civil as well as criminal actions" concerning conduct that is "within the 'legitimate legislative sphere.'" *Eastland* v. *United States Servicemen's Fund*, 421 U.S. 491, 502-503 (1975). This immunity shields Members of Congress "not only from the consequences of litigation's results but also from the burden of defending themselves." *Dombrowski* v. *Eastland*, 387 U.S. 82, 85 (1967) (per curiam).

State and local legislators possess "an immunity that is similar in origin and rationale to that accorded Congressmen under the Speech or Debate Clause." *Supreme Ct. of Va.* v. *Consumers Union of the U.S., Inc.*, 446 U.S. 719, 732 (1980) (citing *Tenney* v. *Brandhove*, 341 U.S. 367 (1951)). But state legislative immunity

is not at issue here because LULAC has not sued the Legislators; it has only *subpoenaed* the Legislators to discover documents concerning the enactment of S.B. 1.

2.  In addition to immunity, the Speech or Debate Clause affords Members of Congress a testimonial, or evidentiary, privilege that prohibits "inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts." *United States* v. *Helstoski*, 442 U.S. 477, 489 (1979) (quoting *United States* v. *Brewster*, 408 U.S. 501, 525 (1972)).  Where applicable, the legislative privilege conferred by the Speech or Debate clause "is absolute." *United States* v. *Rayburn House Office Building, Room 2113, Washington, D.C. 20515*, 497 F.3d 654, 660 (D.C. Cir. 2007) (citing *Eastland*, 421 U.S. at 503).  But, again, the Speech or Debate Clause is not at issue here.

Although state legislators' immunity from suit is similar to that afforded to Members of Congress, the same is *not* true with respect to the state legislative *privilege*.  To the contrary, in *Gillock*, the Supreme Court specifically declined to recognize an absolute testimonial privilege for state legislators, instead reasoning that any such privilege must yield "where important federal interests are at stake." 445 U.S. at 373.

The Supreme Court rejected the argument in *Gillock* that the historical and policy considerations that inspired the Speech or Debate Clause should compel the

Court to recognize a comparable evidentiary privilege for state legislators. 445 U.S. at 368-374. As the Court explained, the state legislative privilege does not guard against "intrusion by the Executive or Judiciary into the affairs of a coequal branch," a concern that is grounded "solely on the separation of powers doctrine." *Id.* at 369-370. The Court reasoned further that "principles of comity" do not "require the extension of a speech or debate type privilege to state legislators" because "federal interference in the state legislative process is not on the same constitutional footing with the interference of one branch of the Federal Government in the affairs of a coequal branch." *Id.* at 370; see also *id.* at 373; *Fitzpatrick* v. *Bitzer*, 427 U.S. 445, 455 (1976). *Gillock* therefore establishes that the legislative privilege offers far more limited protection to state lawmakers than the evidentiary privilege available to Members of Congress through the Speech or Debate Clause.

3. In considering the state legislative privilege in civil litigation, this Court likewise has recognized that the privilege provides only a qualified protection from disclosure. In *Jefferson*, this Court held that "[w]hile the common-law legislative *immunity* for state legislators is absolute, the legislative privilege for state lawmakers is, at best, one which is qualified." 849 F.3d at 624 (emphasis added) (quoting *Perez* v. *Perry*, No. SA-11-cv-360, 2014 WL 106927, at *1 (W.D. Tex. Jan. 8, 2014) (three-judge court)); accord Order at 7, *LULAC* v. *Abbott*, No. 22-

50407 (5th Cir. May 20, 2022) ("Both this court and the Supreme Court have confirmed that the state legislative privilege is not absolute."). Moreover, this Court emphasized that the legislative privilege "must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." *Jefferson*, 849 F.3d at 624 (quoting *Perez*, 2014 WL 106927, at *1).[10]

According to the Legislators, that language from *Jefferson* is dicta. Br. 17. Not so. In that case, parish councilmembers argued that claims against them under 42 U.S.C. 1983 were barred both by legislative immunity and privilege. 849 F.3d at 621. This Court first rejected the councilmembers' assertion that state legislative privilege barred plaintiffs' claims as contrary to the privilege's qualified status and narrow scope before proceeding to hold that "even assuming" that the legislative privilege applied, it could not "bar the adjudication of a claim." *Id.* at 624. Such language signifies that the two reasons this Court gave for rejecting the

---

[10] At times, the Legislators attempt to cabin their sweeping assertion of state legislative privilege to private civil cases and emphasize that the United States has not sought the documents at issue. Br. 19, 21-22, 30, 32. But the Supreme Court expressly recognized the potential for legislators to be called "to testify concerning the purpose of the official action" in *Village of Arlington Heights* v. *Metropolitan Housing Development Corp.*, a private civil suit. 429 U.S. 252, 268 (1977). Moreover, the United States relies heavily on private enforcement of federal civil rights statutes like Section 2 of the VRA; such suits are "private in form only." See pp. 44-45, *infra*.

councilmembers' claim that legislative privilege barred the plaintiffs' suit are "alternative holdings" that are "binding precedent and not obiter dictum." *United States* v. *Wallace*, 964 F.3d 386, 390 (5th Cir.) (citation omitted), cert. denied, 141 S. Ct. 910 (2020).

4.  The Legislators also unpersuasively argue that three out-of-circuit cases have recognized an absolute state legislative privilege from civil discovery on par with the Speech or Debate Clause's testimonial privilege.  Br. 21-23.  Again, not so.  In *American Trucking Associations, Inc.* v. *Alviti*, 14 F.4th 76 (1st Cir. 2021), the First Circuit held that the state legislative privilege could not be overcome in a case challenging a toll under the dormant Commerce Clause because "it is difficult to conceive of a case in which a toll that does not discriminate in effect could be struck down based on discriminatory purpose." *Id.* at 89.  At the same time, the court stressed that it did "not reject altogether the possibility that there might be a private civil case in which state legislative immunity must be set to one side because the case turns so heavily on subjective motive or purpose." *Id.* at 88.  This is just such a case.

Similarly, in holding that the plaintiffs in *In re Hubbard*, 803 F.3d 1298 (11th Cir. 2015), had not overcome the state legislative privilege, the Eleventh Circuit emphasized that the subpoenas "d[id] not serve an important federal interest" because the case involved a "civil action[] by private plaintiffs" and

because the plaintiffs' First Amendment retaliation claim was not cognizable in any event. *Id.* at 1312. The court took particular care to emphasize that its holding "should not be read as deciding whether, and to what extent, the legislative privilege would apply to a subpoena in a private civil action based on a different kind of constitutional claim." *Id.* at 1312 n.13.

Finally, in *Lee* v. *City of Los Angeles*, 908 F.3d 1175 (9th Cir. 2018), cert. denied, 139 S. Ct. 2669 (2019), the Ninth Circuit held in reviewing an appeal from a summary-judgment grant in a redistricting case that the "factual record" did not justify a remand for the purpose of allowing depositions of officials involved in the redistricting process over their assertions of state legislative privilege. *Id.* at 1188. The court so held because the summary-judgment record demonstrated that although racial animus motivated one lawmaker, his motivation was not shared by other lawmakers, rendering any further probing of legislative intent unnecessary. *Id.* at 1183-1186. Needless to say, the Legislators' interlocutory appeal here challenges the district court's rejection of their assertions of state legislative privilege for purposes of *discovery*—not at summary judgment or at trial. Thus, this Court is in no position to conclude now that the discovery that LULAC seeks would make no difference in this case. *Lee* is therefore inapposite.

The upshot is that the Legislators' far-reaching claim that the state legislative privilege is absolute in private civil litigation has no basis in Supreme

Court or circuit-court precedent.  The Legislators are wrong to suggest that affirming the district court's discovery order here would create a circuit split. Indeed, all the circuit cases on which the Legislators rely recognize that the state legislative privilege is not absolute and can be overcome.

B.    *The State Legislative Privilege Does Not Cover Factual Information Or External Communications*

The district court also rightly held that the scope of the state legislative privilege is far narrower than the Legislators claim.  Specifically, the court correctly construed the privilege's scope to exclude (1) "factually based information used in the [legislature's] decision-making process"; and (2) legislators' communications with "parties outside the legislature." ROA.10384, 10386, 10407, 10413-10415, 10422.  That construction flows directly from *Gillock*, which recognized that the state legislative privilege—lacking the separation-of-powers grounding that underlies the Speech or Debate Clause— protects "*candor* in the *internal* exchanges" of the legislature.  445 U.S. at 373 (emphases added) (reasoning by analogy to the executive privilege).

1.  As an initial matter, the district court correctly determined that the state legislative privilege does not apply to "documents containing factually based information used in the decision-making process or disseminated to legislators or committees."  ROA.10384 (quoting *Committee for a Fair & Balanced Map* v. *Illinois State Bd. of Elections*, No. 11 c 5065, 2011 WL 4837508, at *9 (N.D. Ill.

Oct. 11, 2011) (*Fair & Balanced Map*)). Discovery of factual information generally does not jeopardize "candor" in legislative deliberations. *Gillock*, 445 U.S. at 373. That is because "the prospect of disclosure is less likely to make an advisor [or legislator] omit or fudge raw facts, while it is quite likely to have just such an effect on 'materials reflecting deliberative or policy-making processes.'" *Quarles* v. *Department of the Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990) (quoting *EPA* v. *Mink*, 410 U.S. 73, 89 (1973)).

Hence, as courts have recognized, a qualified privilege protects documents "created prior to the passage and implementation" of legislation that "involve opinions, recommendations or advice about legislative decisions between legislators or between legislators and their aides." *Fair & Balanced Map*, 2011 WL 4837508, at *9 (quoting *Doe* v. *Nebraska*, 788 F. Supp. 2d 975, 986 (D. Neb. 2011)); accord *In re Grand Jury*, 821 F.2d 946, 959 (3d Cir. 1987), cert. denied, 484 U.S. 1025 (1988). But that qualified privilege typically does *not* extend to factually based information, such as committee reports and minutes of meetings, used in the decision-making process or disseminated to legislators or committees. *Fair & Balanced Map*, 2011 WL 4837508, at *9; *Doe*, 788 F. Supp. 2d at 984-985. And courts likewise have required disclosure of "the materials and information available [to lawmakers] at the time a decision was made." *Fair & Balanced Map*, 2011 WL 4837508, at *9 (quoting *ACORN* v. *County of Nassau*, No. cv 05-2301,

2007 WL 2815810, at *3 (E.D.N.Y. Sept. 25, 2007)). Such factual information must be disclosed "even if collected and communicated by a personal staff member" to a legislator. *Florida Ass'n of Rehab. Facilities, Inc.* v. *Florida Dep't of Health & Rehab. Servs.*, 164 F.R.D. 257, 267 (N.D. Fla. 1995). "This approach strikes the proper balance between the need for public accountability and the desire to avoid future timidity of lawmakers." *Fair & Balanced Map*, 2011 WL 4837508, at *10.

2. In addition, the district court correctly determined that the Legislators' communications with non-legislative third parties "waived"—*i.e.*, are not covered by—the state legislative privilege in this case. ROA.10386. That is because communications between legislators and non-legislative third parties generally do not qualify as the legislature's "internal exchanges." *Gillock*, 445 U.S. at 373. The legislative privilege gives legislators a qualified entitlement "not to divulge their reasons for supporting or opposing legislation, and not to discuss such matters with outsiders." *Almonte* v. *City of Long Beach*, No. cv 04-4192, 2005 WL 1796118, at *3 (E.D.N.Y. July 27, 2005). But the privilege does not allow legislators "to discuss those matters with some outsiders but then later invoke the privilege as to others." *Ibid.*

Thus, multiple courts in this Circuit (and elsewhere) have explained that the state legislative privilege does not apply to communications with outsiders such as

"party representatives, non-legislators, or non-legislative staff." *Perez*, 2014 WL 106927, at *2; accord *TitleMax of Tex., Inc.* v. *City of Dallas*, No. 3:21-cv-1040, 2022 WL 326566, at *5-6 (N.D. Tex. Feb. 3, 2022); *Gilby* v. *Hughs*, 471 F. Supp. 3d 763, 767 (W.D. Tex. 2020); *Jackson Mun. Airport Auth.* v. *Bryant*, No. 3:16-cv-246, 2017 WL 6520967, at *7 (S.D. Miss. Dec. 19, 2017). Similarly, courts have recognized that "no one could seriously claim privilege" over "a conversation between legislators and knowledgeable outsiders, such as lobbyists." *Bethune-Hill* v. *Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 343 (E.D. Va. 2015) (quoting *Rodriguez* v. *Pataki*, 280 F. Supp. 2d 89, 101 (S.D.N.Y.), aff'd, 293 F. Supp. 2d 302 (S.D.N.Y. 2003)); accord *Fair & Balanced Map*, 2011 WL 4837508, at *10. The same holds true for legislators' communications with "constituents" or "interest groups." *Texas* v. *Holder*, No. 12-128, 2012 WL 13070060, at *2 (D.D.C. June 5, 2012) (three-judge court). And the rule is no different when legislators or their staff communicate with "state agencies." *Bryant*, 2017 WL 6520967, at *7 (quoting *Lee* v. *Virginia State Bd. of Elections*, No. 3:15-cv-357, 2015 WL 9461505, at *1 (E.D. Va. Dec. 23, 2015)).

In asserting a far broader protection for communications with third parties, the Legislators insist that the state legislative privilege applies whenever legislators or their staff are acting in the sphere of legitimate legislative activity and therefore protects meetings and communications with persons outside the legislature to

discuss issues bearing on potential legislation.  Br. 36.  They are wrong.  That

legislators discuss and obtain information from outsiders does not place these

communications under the aegis of the state legislative privilege.  All but one of

the decisions on which the Legislators rely address immunity or privilege under the

Speech or Debate clause; they do not apply the state legislative privilege.  Br. 36

(citing *Helstoski*, 442 U.S. at 489; *Tenney*, 341 U.S. at 376; *Almonte* v. *City of

Long Beach*, 478 F.3d 100, 107 (2d Cir. 2007); *Bruce* v. *Riddle*, 631 F.2d 272, 280

(4th Cir. 1980)).  Indeed, *Gillock* specifically distinguished the concepts of state

legislative privilege and immunity, 445 U.S. at 371, and held that the privilege has

a narrower "scope" than the one offered by the Speech or Debate clause, *id.* at 366.

Although *Hubbard* does address the state legislative privilege, 803 F.3d at 1307-

1308, 1310, it is unpersuasive because, as the district court explained, *Hubbard*

"does not recognize a distinction between the concepts of legislative privilege,

legislative immunity, and the Speech [or] Debate Clause."  ROA.10388 & n.2

(quoting *Bryant*, 2017 WL 6520967, at *9 n.10).

The Legislators also attempt to expand the state legislative privilege by

analogizing it to both the Presidential communications and attorney-client

privileges.  Br. 36-39.  But the Presidential communications privilege, unlike the

state legislative privilege, is "inextricably rooted in the separation of powers under

the Constitution."  *United States* v. *Nixon*, 418 U.S. 683, 708 (1974).  The

attorney-client privilege, by contrast, bears more resemblance to the legislative

privilege in that both aim to protect the quality of deliberations.  *In re Grand Jury*,

821 F.2d at 957.  But, the legislative privilege, unlike the attorney-client privilege

"protects a *process*."  *Favors* v. *Cuomo*, 285 F.R.D. 187, 210 (E.D.N.Y. 2012).

The focus of the legislative privilege is on how (if at all) disclosure of otherwise

protected communications would affect the legislative process, not on

confidentiality for its own sake.  Because legislative outsiders are "always free to

disclose every aspect of the[ir] encounter[s]  *  *  *  it is hard to contend that there

is any reasonable expectation of secrecy  *  *  *  or serious threat of timidity for

fear that the conversation is discovered."  *North Carolina State Conf. of the*

*NAACP* v. *McCrory*, Nos. 1:13-cv-658, 1:13-cv-660, 1:13-cv-861, 2015 WL

12683665, at *8 (M.D.N.C. Feb. 4, 2015).

Accordingly, the district court's rulings regarding the legislative privilege's

scope were correct.

C.     *Any Valid Assertion Of State Legislative Privilege Here Must Yield To The*
       *Important Federal Interest In Enforcing Section 2 Of The VRA*

The district court also did not abuse its discretion in concluding that any

valid assertion of state legislative privilege must yield here.  ROA.10393, 10397.

Applying the five-factor balancing test adopted in *Rodriguez*, 280 F. Supp. 2d at

100-101, to determine when the legislative privilege is overcome, the court

concluded that LULAC's "need for accurate fact finding outweighs any chill to the legislature's deliberations." ROA.10392-10393. The *Rodriguez* factors weigh:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

ROA.10392 (quoting *Rodriguez*, 280 F. Supp. 2d at 101).

Without proposing any alternative test, the Legislators protest the district court's reliance on the *Rodriguez* factors. Br. 34-35. But these factors are widely used by courts in this Circuit and elsewhere to determine when the state legislative privilege should yield. See *Angelicare, LLC* v. *St. Bernard Par.*, No. 17-7360, 2018 WL 1172947, at *8 (E.D. La. Mar. 6, 2018); *Bryant*, 2017 WL 6520967, at *6; *Harding* v. *County of Dallas*, No. 3:15-cv-0131, 2016 WL 7426127, at *12 (N.D. Tex. Dec. 23, 2016); *Hall* v. *Louisiana*, No. 12-657, 2014 WL 1652791 (M.D. La. Apr. 23, 2014); *Veasey* v. *Perry*, No. 2:13-cv-193, 2014 WL 1340077, at *2 (S.D. Tex. Apr. 3, 2014); *Perez*, 2014 WL 106927, at *2 (three-judge court). Moreover, the *Rodriguez* factors' provenance lies in an even more deeply engrained test for determining whether the deliberative-process privilege should be overcome in a particular case. See *Rodriguez*, 280 F. Supp. 2d at 101 (citing *In re Franklin Nat'l Bank Secs. Litig.*, 478 F. Supp. 577, 583 (E.D.N.Y. 1979)).

The Legislators wrongly suggest that the Eleventh Circuit rejected the *Rodriguez* factors in *Hubbard*. Br. 35. Instead, the multi-factor test the court rejected in *Hubbard* concerned whether "the lawmakers had forfeited their privileges, including their legislative privileges, by failing to properly assert them." 803 F.3d at 1308. *Hubbard* set forth no standard for when the state legislative privilege should yield, and LULAC does not contend that the Legislators failed to properly assert the privilege in this case.

In addition, the Legislators criticize the *Rodriguez* factors as "simply mirror[ing] the general standard for discovery of non-privileged material," thereby affording little additional protection. Br. 35 (citing Fed. R. Civ. P. 26(b)(1)). But Rule 26(b)(1) concerns the relevance of evidence in the general sense of "ha[ving] any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a). *Rodriguez*'s relevance inquiry, by contrast, focuses on the centrality of the evidence assertedly protected by the state legislative privilege to the specific type of claim at issue in a case and the availability of that sort of evidence by other means. 280 F. Supp. 2d at 101-102. For example, although the depositions that plaintiffs sought in *Lee* clearly were relevant in a Rule 401(a) sense, the Ninth Circuit concluded that piercing the legislative privilege was not justified in light of the summary-judgment record as a whole. See p. 31, *supra*. And whereas Rule 26(b)(1) balances the "burden or

expense of the proposed discovery" against "its likely benefit," the *Rodriguez* factors weigh the chilling effect that disclosure would have on legislative deliberations. 280 F. Supp. 2d at 101. The *Rodriguez* factors therefore properly provide qualified protection to legislative deliberations above and beyond the general discovery limitations provided by Rule 26(b)(1).

The district court did not abuse its discretion in applying the *Rodriguez* factors here (ROA.10392-10393):

**Relevance and Availability of Other Evidence.** Proof of legislative intent goes to the heart of LULAC's Section 2 claim. Although not the exclusive means of proving a violation of Section 2, a "showing of intent is sufficient to constitute a violation of" that statute. *McMillian* v. *Escambia Cnty.*, 748 F.2d 1037, 1046 (5th Cir. 1984); see also n.3, *supra*. LULAC commendably tailored its motion to compel to seek not the full swath of documents withheld by the Legislators, but instead a subset "that appear[s] particularly probative of the legislative intent behind SB 1." ROA.9100.

Courts in this Circuit and elsewhere routinely order production of documents or other discovery over assertions of state legislative privilege where proof of legislative intent is necessary to enforce federal voting safeguards. See, *e.g.*, *League of Women Voters of Fla., Inc.* v. *Lee*, 340 F.R.D. 446, 456-458 (N.D. Fla. 2021); *League of Women Voters of Mich.* v. *Johnson*, No. 17-cv-14148, 2018 WL

2335805, at *4-5 (E.D. Mich. May 23, 2018); *Benisek* v. *Lamone*, 263 F. Supp. 3d 551, 553, 555 (D. Md.), aff'd, 241 F. Supp. 3d 566 (D. Md. 2017); *Bethune-Hill*, 114 F. Supp. 3d at 339, 343; *Veasey*, 2014 WL 1340077, at *2-3; *Favors*, 285 F.R.D. at 218-219, 221. And although, as the Legislators say (Br. 25), LULAC may prove discriminatory intent through circumstantial evidence, *Veasey* v. *Abbott*, 830 F.3d 216, 235 (5th Cir. 2016) (en banc), "candid discussions among legislators" are crucial evidence of discriminatory intent, "given the practical reality that officials 'seldom, if ever, announce on the record that they are pursuing a particular course of action because of their desire to discriminate against a racial minority,'" *Veasey*, 2014 WL 1340077, at *3 (quoting *Smith* v. *Town of Clarkton*, 682 F.2d 1055, 1064 (4th Cir. 1982)).

Indeed, evidence of individual legislators' discriminatory motivations have proven pivotal to successful enforcement of federal voting safeguards. In *Hunter* v. *Underwood*, 471 U.S. 222 (1985), for example, the Supreme Court held that a facially neutral voting restriction violated the Equal Protection Clause based in part on a legislator's statement that the purpose of the law was "to establish white supremacy." *Id.* at 229 (citation omitted). Similarly, in *Busbee* v. *Smith*, 549 F. Supp. 494 (D.D.C. 1982), aff'd, 459 U.S. 1166 (1983), a three-judge district court held that Georgia was not entitled to preclearance of its legislative districts under Section 5 of the VRA because "[t]he record clearly reveals that if * * * gross

racial slurs had been eliminated from the reapportionment process," the districts "would have been drawn differently." *Id.* at 518 (internal quotation marks and citation omitted).[11]

According to the Legislators, *Arlington Heights* puts a significant thumb on the scale against disclosure of materials protected by the state legislative privilege. Br. 21-22, 25. Although *Arlington Heights* described as "extraordinary" cases in which legislators are called to testify on the stand, 429 U.S. at 268, LULAC's motion to compel sought only discovery of documents, not testimony, from the Legislators. ROA.9096-9121. And, in any event, the *Arlington Heights* plaintiffs were "allowed, both during the discovery phase and at trial, to question Board members fully about materials and information available to them at the time of [their] decision." 429 U.S. at 270 n.20. The Supreme Court held only that that there had been "no abuse of discretion" in barring specific questions of legislators already on the stand at trial, under "the circumstances of [that] case." *Ibid.*

To be clear, although the *Rodriguez* factors often will support litigants' attempts to overcome the state legislative privilege when they seek to bring claims enforcing federal laws such as Section 2 that prohibit practices enacted with a

---

[11] See also *Cooper* v. *Harris*, 137 S. Ct. 1455, 1468-1469 (2017); *Alabama Legis. Black Caucus* v. *Alabama*, 575 U.S. 254, 265-266, 273-274 (2015); *Bush* v. *Vera*, 517 U.S. 952, 961 (1996); *Texas* v. *United States*, 887 F. Supp. 2d 133, 178 (D.D.C. 2012) (three-judge court); *Garza* v. *County of L.A.*, 756 F. Supp. 1298, 1304, 1348-1350 (C.D. Cal. 1990).

discriminatory purpose, the United States does not suggest that such claims provide a "categorical exception" to the privilege's protections. *Lee*, 908 F.3d at 1188. As *Lee* demonstrates, a court can reasonably conclude that the legislative privilege need not yield—even when legislative intent is at issue—when circumstantial evidence firmly establishes that discrimination played no role in a law's enactment and therefore that further probing for direct evidence of discriminatory intent would prove fruitless. *Id.* at 1183-1186, 1188. But courts often will not be in a position to make such a judgment until they are ready to evaluate the merits, as was the case in *Lee*. *Id.* at 1178; see also *Veasey*, 2014 WL 1340077, at *3-4 (ordering disclosure for discovery purposes of documents withheld on legislative privilege grounds, while reserving an assessment of the privilege's applicability to specific documents until trial); cf. Order at 8-9, *LULAC* v. *Abbott*, No. 22-50407 (5th Cir. May 20, 2022) (affirming a district court's order requiring legislators to answer any questions at depositions to which they object on legislative-privilege grounds, but deeming the responses confidential pending a ruling on ultimate use of those responses).

These factors strongly favor LULAC.

***Seriousness of the Litigation.*** LULAC's Section 2 claim is no doubt serious. In enacting Section 2, Congress sought "to achieve at long last what the Fifteenth Amendment had sought to bring about 95 years earlier: an end to the

denial of the right to vote based on race." *Brnovich* v. *Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2330 (2021). As one district court stated in concluding that this factor favored disclosure in a similar case, "voting-rights litigation is especially serious." *League of Women Voters of Fla.*, 340 F.R.D. at 457. Its seriousness is not diminished when such litigation is brought by private parties. Indeed, such cases "seek to vindicate public rights" and are therefore "akin to criminal prosecutions." *Fair & Balanced Map*, 2011 WL 4837508, at *6; *id.* at *8 (concluding that the litigation's seriousness favored disclosure).

The Legislators contend that *Gillock* "dr[ew] the line" for overcoming the state legislative privilege at "civil actions," meaning that it can be overcome *only* in cases enforcing federal criminal law. Br. 29 (quoting *Gillock*, 445 U.S. at 373). But *Gillock* used that language to distinguish *Tenney*, which "was a civil action brought by a private plaintiff to vindicate *private rights*" and concerned legislative *immunity*. 445 U.S. at 372 (emphasis added). Even when, as here, a private plaintiff, rather than the Attorney General of the United States, enforces Section 2 of the VRA, such suits are "private in form only" and the plaintiff functions as a "private attorney general." Cf. *Newman* v. *Piggie Park Enters., Inc.*, 390 U.S. 400, 401-402 (1968) (per curiam) (citation omitted) (construing fee-shifting provision in Title II of the Civil Rights Act of 1964, 42 U.S.C. 2000a-3(b), which is nearly identical to Section 14(e) of the VRA, 52 U.S.C. 10310(e)); see also *Shelby Cnty.*

v. *Lynch*, 799 F.3d 1173, 1185 (D.C. Cir. 2015) ("Congress intended for courts to award fees under the VRA, pursuant to the *Piggie Park* standard, when prevailing parties help[] secure compliance with the statute.").

Although *Gillock* concerned enforcement of federal criminal law, the Court expressly identified that as just one example where the state legislative privilege gives way. See 445 U.S. at 373 (concluding that the privilege "yields" where "important federal interests are at stake, *as in* the enforcement of federal criminal law" (emphasis added)). Voting-rights enforcement—whether by private plaintiffs or the Attorney General—likewise safeguards critically important federal interests. See, *e.g.*, *Michigan State A. Philip Randolph Inst.* v. *Johnson*, No. 16-cv-11844, 2018 WL 1465767, at *7 (E.D. Mich. Jan. 4, 2018); *Bethune-Hill*, 114 F. Supp. 3d at 341; *Page* v. *Virginia State Bd. of Elections*, 15 F. Supp. 3d 657, 667 (E.D. Va. 2014); *Rodriguez*, 280 F. Supp. 2d at 102. This factor also strongly favors LULAC.

**Role of the Government in the Litigation.** As some courts have observed, this factor is a vestige of the *Rodriguez* factors' roots in the deliberative-process privilege. "Of course the state is involved, there would be no point [in seeking discovery from] the Legislators if it were not." *League of Women Voters of Fla.*, 340 F.R.D. at 457. This factor therefore largely overlaps with the relevance factors in this context and likewise strongly favors LULAC. See *Veasey*, 2014 WL

1340077, at * 2 (concluding that the role-of-the-government factor favored disclosure because "[t]he motive and intent of the state legislature when it enacted [the challenged statute] is the crux of this Voting Rights Act case").

**_Effect of Potential Disclosure on Legislative Deliberation._** To be sure, disclosure of the Legislators' communications likely would have some marginal effect on the fullness and frankness of legislative deliberations. That is, after all, the whole reason that a qualified state legislative privilege exists. But _Gillock_ dictates that such concerns "yield[]" where, again, "important federal interests are at stake." 445 U.S. at 373. Any chilling effect that disclosure might have is mitigated here because the legislative privilege is routinely overcome in voting-rights cases. Given that, few legislators likely labor under the view that their communications will remain cloistered when they work to enact controversial and restrictive voting laws like S.B. 1. The district court did not abuse its discretion in finding that "the need for accurate fact finding outweighs any chill to the legislature's deliberations." ROA.10393.

Moreover, LULAC seeks the Legislators' communications for the purpose of "ascertaining the truth" concerning the legislature's motivations for enacting S.B. 1. _Jefferson_, 849 F.3d at 624 (quoting _Perez_, 2014 WL 106927, at *1). They have conveyed no desire to broadcast the fruits of their discovery to the public at this time. On the contrary, a stipulated confidentiality and protective order sharply

curtails LULAC's ability to disclose to the general public any "[c]orrespondence and other communications between parties or with nonparties * * * if the communication was made with the understanding or reasonable expectation that the information would not become generally available to the public." ROA.7124; see also *Veasey*, 2014 WL 1340077, at *4 (ordering disclosure of documents protected by the legislative privilege subject to a protective order). Thus, although this factor favors the Legislators, it does so only slightly.

**Balancing.** Because the *Rodriguez* factors tilt decisively in favor of disclosure here, the district court did not abuse its discretion in finding that the state legislative privilege is overcome. As the court rightly concluded, where, as here, "important federal interests are at stake, the principle of comity, which undergirds the protection of legislative independence, yields." ROA.10393 (internal quotation marks omitted) (quoting *Benisek*, 263 F. Supp. 3d at 555); see also *Gillock*, 445 U.S. at 373. As the court emphasized, "[c]ourts have repeatedly recognized that such important federal interests include protecting the fundamental right to vote." ROA.10393; see also, *e.g.*, *Veasey*, 2014 WL 1340077, at *2.

Importantly, LULAC is not seeking the admission of any evidence at this time; all it desires is "accurate fact finding" concerning the legislature's intent in enacting S.B. 1. ROA.10393. Indeed, LULAC narrowly tailored its motion to compel to seek only those documents "that appear particularly probative of the

legislative intent behind SB 1." ROA.9100. As a motions panel of this Court recently stressed, the state legislative privilege "must not be used as a cudgel to prevent the discovery of non-privileged information or to prevent the discovery of the truth in cases where the federal interests at stake outweigh the interests protected by the privilege." Order at 9, *LULAC* v. *Abbott* No. 22-50407 (5th Cir. May 20, 2022).

For these reasons, the state legislative privilege should not defeat LULAC's efforts to uncover the motivations behind S.B. 1. The district court did not abuse its discretion here.

## III

### THE DISTRICT COURT PROPERLY REJECTED THE LEGISLATORS' ASSERTIONS OF ATTORNEY-CLIENT PRIVILEGE

The district court properly rejected the Legislators' attempts to shield 31 documents under the attorney-client privilege. The well-established purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients." *Upjohn Co.* v. *United States*, 449 U.S. 383, 389 (1981). "Because the attorney-client privilege has the effect of withholding relevant information from the fact-finder," courts interpret it "narrowly so as to apply only where necessary to achieve its purpose." *E.E.O.C.* v. *BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) (internal quotation marks, alterations, and citation omitted).

To successfully assert the privilege, "the proponent must prove: '(1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding.'" *BDO*, 876 F.3d at 695 (citation omitted); see also *In re Grand Jury Proceedings*, 517 F.2d 666, 670 (5th Cir. 1975) (different articulation of same rule). "Determining the applicability of the privilege is a 'highly fact-specific' inquiry," for which "the party asserting the privilege bears the burden of proof." *BDO*, 876 F.3d at 695 (citation omitted). In this inquiry, "[a]mbiguities as to whether the elements of a privilege claim have been met are construed against the proponent." *Ibid.*

Here, the Legislators have failed to carry their burden with respect to the 31 documents at issue for two distinct reasons. Twenty-six of the documents, which were shared with a third party with whom the Legislators cannot establish a common legal interest in actual or anticipated litigation, do not have the requisite confidentiality for the attorney-client privilege. And another five of the documents, which merely conveyed or solicited factual information rather than legal advice, are unprotected.

*A.*      *The Attorney-Client Privilege Does Not Protect Documents Shared With A Third Party Who Lacks A Common Legal Interest In Actual Or Anticipated Litigation*

To be protected under the attorney-client privilege, the documents must be confidential. *BDO*, 876 F.3d at 695. "Because the privilege protects only confidential communications, the presence of a third person while such communications are made or the disclosure of an otherwise privileged communication to a third person eliminates the intent for confidentiality on which the privilege rests." *Hodges, Grant & Kaufmann* v. *United States Dep't of Treasury*, 768 F.2d 719, 721 (5th Cir. 1985). Here, 26 of the contested documents were not confidential because they included Alix Morris, the Deputy General Counsel to the Lieutenant Governor (ROA.9514), in the distribution list. See ROA.10419-10420, 10436-10448. As the district court recognized, Ms. Morris is a third party to any attorney-client relationships that the Legislators may have otherwise had with the recipients. See ROA.10419-10420.[12]

The Legislators first argue that the Lieutenant Governor is not "a stranger to the attorney-client relationship" because, "in this context," he is "[an] agent[] of

---

[12] The United States does not concede that the Legislators had an attorney-client relationship with other individuals in the distribution list, including (1) members of the Texas Legislative Council (TLC), and (2) the Chief of the Elections Integrity Division at OAG. But the Court need not decide either issue in this case. Even if an attorney-client relationship existed among the other recipients, Ms. Morris would still be a third party on each of the 26 documents at issue.

the Legislature." Br. 42. But this does not suffice to establish that the Lieutenant Governor was an agent of the Legislators for purposes of the attorney-client privilege, let alone that the Lieutenant Governor's attorney and the Legislators had an attorney-client relationship. In any case, the Legislators forfeited this argument below by turning straight to the question whether the common-interest doctrine protects "communications between a lawyer representing the Lieutenant Governor and other legislators or their staff." ROA.9460.

The Legislators next argue, as they did in the district court, that the recipients shared a common legal interest even if not an attorney-client relationship. See Br. 17-18, 43-46. The common-interest doctrine is a narrow exception to the confidentiality requirement "if a privileged communication is shared with a third person who has a common legal interest with respect to the subject matter of the communication." *Hodges*, 768 F.2d at 721; see also *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710-713 (5th Cir. 2001) (collecting cases). In this Circuit, the common-interest doctrine protects: "(1) communications between co-defendants in actual litigation and their counsel; and (2) communications between *potential* co-defendants and their counsel." *United States* v. *Newell*, 315 F.3d 510, 525 (5th Cir. 2002) (quoting *In re Santa Fe Int'l Corp.*, 272 F.3d at 710); see also *BCR Safeguard Holding, L.L.C.* v. *Morgan Stanley Real Estate Advisor, Inc.*, 614 F. App'x 690, 703 (5th Cir. 2015) (observing that "[s]everal courts

* * *  have held that the privilege extends to co-plaintiffs in litigation" and that
"this [C]ourt has not expressly held" otherwise).  Communications between
potential co-defendants are protected only if there is "a palpable threat of litigation
at the time of the communication, rather than a mere awareness that one's
questionable conduct might some day result in litigation."  *Newell*, 315 F.3d at 525
(citation omitted)*.*  In other words, facing "possible—not imminent—civil or
criminal action" is an insufficient basis for the common-interest doctrine.  See *id.*
at 525-526.  Here, the Legislators' communications with Ms. Morris fall into
neither category.

When the contested communications were sent (via email) in this case, there
was no actual litigation pending against the Legislators for S.B. 1.  The Legislators
point to pending litigation about *other* aspects of the Texas Election Code.  See
Br. 44.  But those aspects of the Texas Election Code were not the subject of the
communications at issue.  The first complaint challenging S.B. 1 was not filed until
September 3, 2021 (ROA.56), after these 26 emails were sent (see generally
ROA.9285-9530 for dates).  And the Legislators were not named as co-defendants
in any of the S.B. 1 litigation.

"Nor can the  * * *  Legislators plausibly claim that a threat of litigation
existed at the time of the communications," as the district court determined.
ROA.10394-10395.  Citing past voting-rights cases, the Legislators argue that

"election-based legislation  *  *  *  is always undertaken in the shadow of litigation." Br. 45-46.  In essence, the Legislators ask this Court to find a common interest sufficient to shield their communications from disclosure because the State has been sued on this general topic in the past.  But, the threat of litigation must be "imminent," not just "possible," to establish a common interest.  See *Newell*, 315 F.3d at 525-526 (finding no common legal interest when the proponent of the privilege sought legal advice to protect herself and her employees from possible future action, absent an investigation or threat of prosecution).  As this Court has made clear, "mere awareness that one's questionable conduct might some day result in litigation" is insufficient.  *Id.* at 525 (citation omitted).

To hold otherwise in this case would be an unprecedented and unjustified expansion of the common-interest doctrine.  The Legislators cite no legal support for their argument that communications about election-based legislation are *always* made under a palpable threat of litigation.  And the Legislators provide no limiting principles as to which legislators would share the common interest or which legislation would be contentious enough that legislators could sufficiently anticipate litigation.  Theoretically, the Legislators' argument could apply to all legislators' communications on any piece of legislation given the mere possibility of litigation in the future.

In a parallel context, courts have rejected an argument under the work-product doctrine that some work is always in anticipation of litigation.  In *United States* v. *Davis*, 636 F.2d 1028 (5th Cir.), cert. denied, 454 U.S. 862 (1981), this Court denied a claim for protection under the work-product doctrine for "papers generated by an attorney who prepares a tax return  *  *  *  simply because there is always a possibility that the IRS might challenge a given return." *Id.* at 1040.  And in *Baldus* v. *Brennan*, No. 11-cv-562, 2011 WL 6385645 (E.D. Wis. Dec. 20, 2011), a three-judge district court reached the same conclusion with respect to the work of a legislature.  *Id.* at *2.  The court explained that "[t]he Legislature could *always* have a reasonable belief that *any* of its enactments would result in litigation," because the "nature of the legislative process" is that "it often involves contentious issues that the public *may* challenge as being unconstitutional." *Ibid.* (third emphasis added).  If this possibility of litigation over legislation were sufficient, the legislature could conceivably "obscure its legislative actions from the public eye" simply by retaining counsel. *Ibid.*

Here, too, the Court should reject this bald attempt to transform the narrow exception for the common-interest doctrine into a limitless attorney-client privilege for Legislators when performing their legislative functions.  "[B]ecause the privilege is an obstacle to truthseeking," this Court has recognized that "it must be construed narrowly to effectuate necessary consultation between legal advisers and

clients." *In re Santa Fe Int'l Corp.*, 272 F.3d at 710 (internal quotation marks and citation omitted). Given its clearly defined limits in this Circuit, the common-interest doctrine provides no protection to the 26 emails that include Ms. Morris, a third party, in the absence of a common interest in actual or imminent litigation.[13]

B.     *The Attorney-Client Privilege Does Not Protect Documents Conveying Or Soliciting Facts Rather Than Legal Advice*

The attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn*, 449 U.S. at 395; see also *United States* v. *El Paso Co.*, 682 F.2d 530, 538 n.10 (5th Cir. 1982), cert. denied, 466 U.S. 944 (1984). Here, after conducting *in camera* review, the district court applied this basic proposition of law to five of the contested documents which conveyed or solicited information

---

[13] Some courts outside this Circuit have adopted an alternative rule by which "communications need not be made in anticipation of litigation to fall within the common interest doctrine." *United States* v. *BDO Seidman, LLP*, 492 F.3d 806, 816 & n.6 (7th Cir. 2007), cert. denied, 552 U.S. 1242 (2008). The Legislators concede that this is not the rule in this Circuit and reserve their right to seek en banc review. Br. 43-44. But their argument would fail even under the alternative rule, for which the exception remains "strictly" limited to "where the parties undertake a joint effort with respect to a common *legal* interest" and the "communications [are] made to further an ongoing enterprise." *BDO Seidman*, 492 F.3d at 815-816 (emphasis added). The Legislators "cannot simply point to a generalized interest in passing constitutional legislation to justify invoking the doctrine." *Bethune-Hill* v. *Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 347 (E.D. Va. 2015).

about an alleged instance of election fraud and a county-level legislation proposal. See ROA.10395; see also ROA.10434-10435, 10447-10449.

The Legislators do not contest the legal standard, but instead take issue with the district court's "blanket statement that 'many' of the documents subject to the attorney-client privilege concerned 'facts, not legal advice.'" Br. 46. In the appendix to its order, however, the court clearly identified the five documents that it ordered disclosed on this basis. See ROA.10434-10435, 10447-10449. The Legislators make no argument, nor could they, that the court clearly erred in its assessment of these documents.

Regardless, the Legislators argue that "this basis for dispensing with the privilege does not apply to the dozens of other documents over which the attorney-client privilege is asserted, and which indisputably concern legal advice." Br. 46. To be clear, the district court ordered the other 26 documents disclosed on a different basis. As described above, even if those documents were legal communications, they lacked the requisite confidentiality for the attorney-client privilege because they were sent to a third party who did not share a common interest in actual or anticipated litigation with the Legislators.

# CONCLUSION

For the foregoing reasons, this Court should dismiss this appeal for lack of

jurisdiction or, in the alternative, affirm the district court's order in full.

Respectfully submitted,

KRISTEN CLARKE
  Assistant Attorney General

s/ Jonathan L. Backer
BONNIE I. ROBIN-VERGEER
JONATHAN L. BACKER
ALISA C. PHILO
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 532-3528

**CERTIFICATE OF SERVICE**

I certify that on July 18, 2022, I electronically filed the foregoing BRIEF

FOR THE UNITED STATES AS APPELLEE with the Clerk of the Court for the

United States Court of Appeals for the Fifth Circuit by using the appellate

CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and

that service will be accomplished by the appellate CM/ECF system.


s/ Jonathan L. Backer
JONATHAN L. BACKER
 Attorney

**CERTIFICATE OF COMPLIANCE**

I certify that the attached BRIEF FOR THE UNITED STATES AS APPELLEE:

(1) complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12950 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f); and

(2) complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word 2019, in 14-point Times New Roman font.

s/ Jonathan L. Backer
JONATHAN L. BACKER
 Attorney

Date:  July 18, 2022