No. 22-50435

# In the United States Court of Appeals for the Fifth Circuit

La Union Del Pueblo Entero, Et al.,

*Plaintiffs*

*v.*

Gregory W. Abbott, in his Official Capacity as Governor of Texas, Et al.,

*Defendants*

LULAC Texas; Vote Latino; Texas Alliance for Retired Americans; Texas AFT; United States of America,

*Plaintiffs-Appellees*

*v.*

Senator Bryan Hughes; Senator Paul Bettencourt; Briscoe Cain, Texas Representative; Andrew Murr, Texas Representative,

*Appellants.*

On Appeal from the United States District Court for the Western District of Texas, San Antonio Division

## APPELLANTS' REPLY BRIEF

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Judd E. Stone II
Solicitor General

Lanora C. Pettit
Principal Deputy Solicitor General
Lanora.Pettit@oag.texas.gov

William F. Cole
Assistant Solicitor General

Counsel for Appellants

# TABLE OF CONTENTS

Table of Authorities ............................................................................. ii

Introduction ...................................................................................... 1

Argument ........................................................................................... 2

    I.  This Court Has Jurisdiction .................................................... 2

        A.  This appeal falls within the collateral-order doctrine ........... 3

        B.  Plaintiffs' contrary arguments lack merit ............................ 5

    II.  The Legislators Properly Claimed Legislative Privilege Over the Challenged Documents ............................................................... 9

        A.  Plaintiffs' desire for discovery cannot overcome the legislative privilege ............................................................ 10

        B.  The legislative privilege has not been waived ..................... 17

    III.  The Legislators Properly Claimed Attorney-Client Privilege Over the Subset of Documents Still at Issue ...................................... 21

Conclusion ....................................................................................... 25

Certificate of Service ......................................................................... 26

Certificate of Compliance ................................................................. 26

# Table of Authorities

**Page(s)**

**Cases:**

*A-Mark Auction Galleries, Inc. v. Am. Numismatic Ass'n*,
  233 F.3d 895 (5th Cir. 2000) ..................................................7, 8

*Abbott v. Mexican Am. Legislative Caucus, Tex. H.R.*,
  No. 22-0008, 2022 WL 2283221 (Tex. June 24, 2022) ..............23-24

*Almonte v. City of Long Beach*,
  478 F.3d 100 (2d Cir. 2007) ...................................................... 17

*Am. Trucking Ass'ns v. Alviti*,
  14 F.4th 76 (1st Cir. 2021) ..............................................*passim*

*Bogan v. Scott-Harris*,
  523 U.S. 44 (1998) ...................................................................20

*Branch v. Phillips Petroleum Co.*,
  638 F.2d 873 (5th Cir. 1981) ..................................................7, 8

*Brnovich v. Democratic Nat'l Comm.*,
  141 S. Ct. 2321 (2021) ............................................................. 16

*Brown & Williamson Tobacco Corp. v. Williams*,
  62 F.3d 408 (D.C. Cir. 1995) ................................................... 19

*Bruce v. Riddle*,
  631 F.2d 272 (4th Cir. 1980) ................................................... 18

*Cavallaro v. United States*,
  284 F.3d 236 (1st Cir. 2002) ................................................... 21

*Davis v. Abbott*,
  781 F.3d 207 (5th Cir. 2015) ....................................................24

*Eastland v. U.S. Servicemen's Fund*,
  421 U.S. 491 (1975) ...................................................................5

*EEOC v. Wash. Suburban Sanitary Comm'n*,
  631 F.3d 174 (4th Cir. 2011) ................................................... 19

*In re Grand Jury*,
  821 F.2d 946 (3d Cir. 1987) .................................................... 14

*Gravel v. United States*,
  408 U.S. 606 (1972) ................................................................. 19

*Heinsohn v. Carabin & Shaw, P.C.*,
  832 F.3d 224 (5th Cir. 2016) ................................................... 13

*In re Hubbard*,
   803 F.3d 1298 (11th Cir. 2015) ...................................................*passim*

*In re Itron, Inc.*,
   883 F.3d 553 (5th Cir. 2018) .......................................................... 12

*Jaffee v. Redmond*,
   518 U.S. 1 (1996) ........................................................................... 13

*Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Parish Gov't*,
   849 F.3d 615 (5th Cir. 2017) ......................................................10, 11

*League of United Latin Am. Citizens v. Abbott*,
   No. 22-50407, 2022 WL 2713263 (5th Cir. May 20, 2022)............... 5-6, 8, 10, 11

*Lee v. City of Los Angeles*,
   908 F.3d 1175 (9th Cir. 2018) ....................................................*passim*

*Leonard v. Martin*,
   38 F.4th 481 (5th Cir. 2022)................................................. 2, 4, 6, 8

*Logan v. Com. Union. Ins. Co.*,
   96 F.3d 971 (7th Cir. 1996) ........................................................... 13

*Mercado v. Lynch*,
   823 F.3d 276 (5th Cir. 2016)............................................................6

*Mohawk Indus., Inc. v. Carpenter*,
   558 U.S. 100 (2009) ...................................................................*passim*

*Pickett v. Tex. Tech Univ. Health Scis. Ctr.*,
   37 F.4th 1013 (5th Cir. 2022) .........................................................9

*Piratello v. Philips Elecs. N. Am. Corp.*,
   360 F.3d 506 (5th Cir. 2004) ..........................................................8

*In re Santa Fe Int'l Corp.*,
   272 F.3d 705 (5th Cir. 2001) .........................................................24

*In re SEC ex rel. Glotzer*,
   374 F.3d 184 (2d Cir. 2004) ...........................................................8

*Shelby County v. Holder*,
   570 U.S. 529 (2013)......................................................................24

*S. Pac. Transp. Co. v. San Antonio, Tex. ex rel. City Pub. Serv. Bd.*,
   748 F.2d 266 (5th Cir. 1984) ..........................................................7

*Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*,
   446 U.S. 719 (1980).....................................................................18

*Tenney v. Brandhove*,
   341 U.S. 367 (1951)........................................................... 4, 13, 17

*The N.Y. Times Co. v. Gonzales*,
    459 F.3d 160 (2d Cir. 2006) ............................................................ 13

*United States v. BDO Seidman, LLP*,
    492 F.3d 806 (7th Cir. 2007) .......................................................... 21

*United States v. Gillock*,
    445 U.S. 360 (1980) ................................................ 4, 14, 17, 18

*United States v. Guillen-Cruz*,
    853 F.3d 768 (5th Cir. 2017) ...........................................................22

*United States v. Helstoski*,
    442 U.S. 477 (1979) .......................................................... 4, 17

*United States v. Nixon*,
    418 U.S. 683 (1974) ......................................................................... 13

*United States v. O'Brien*,
    391 U.S. 367 (1968) .................................................................15, 16

*United States v. Ryan*,
    402 U.S. 530 (1971) ...........................................................................8

*United States v. Walker*,
    302 F.3d 322 (5th Cir. 2002) ............................................................8

*United States v. Zolin*,
    491 U.S. 554 (1989) ......................................................................... 13

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ......................................................................... 12

*Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*,
    913 F.3d 443 (5th Cir. 2019) ................................................ 2, 3, 4, 5

*Veasey v. Abbott*,
    830 F.3d 216 (5th Cir. 2016) (en banc) ......................................... 15

*Vill. of Arlington Heights v. Metro. Hou. Dev. Corp.*,
    429 U.S. 252 (1977) ................................................................*passim*

*Whole Woman's Health v. Smith*,
    896 F.3d 362 (5th Cir. 2018) ..................................................*passim*

**Constitutinoal Provisions and Statutes:**

U.S. Const.:
    amend. I .....................................................................................6, 11
    amend. XIV ................................................................................... 11

28 U.S.C. § 1291 ...................................................................................2

42 U.S.C. § 1973c ...............................................................................24

52 U.S.C.§ 10301 ................................................................. 11

Tex. Gov't Code § 323.006(a)(7)-(8) ................................................. 22

**Other Authorities:**

Opposition to Motion for Leave to Take Depositions Out of Time,
*LULAC v. Abbott*, No. 3:21-cv-00259 (W.D. Tex. July 22, 2022),
ECF No. 466 ........................................................................ 5

Order Granting Motion to Enforce Third-Party Subpoenas,
*LULAC v. Abbott*, No. 3:21-cv-00259 (W.D. Tex. July 25, 2022),
ECF No. 467 ........................................................................ 5

*Restatement (Third) of the Law Governing Lawyers* (2000) ..................... 21

# Introduction

For centuries, the legislative privilege has protected the legislative process by shielding legislators' motives from discovery in most circumstances. Although no one disputes that state legislators can claim only a somewhat qualified privilege in federal courts, three of this Court's sister circuits have nonetheless applied the privilege to protect state legislators from efforts to pry into their subjective motives, even in constitutional litigation. *Am. Trucking Ass'ns v. Alviti*, 14 F.4th 76 (1st Cir. 2021); *Lee v. City of Los Angeles*, 908 F.3d 1175 (9th Cir. 2018); *In re Hubbard*, 803 F.3d 1298 (11th Cir. 2015). The district court erred in ruling otherwise.

Plaintiffs and the United States try to evade review of that decision by claiming the Court lacks appellate jurisdiction. Plaintiffs are wrong.[1] This case presents important, undecided, and recurring questions bearing on the scope of evidentiary privileges of state legislators. And because the Legislators are not parties, they will not be able to appeal the district court's final judgment.

Plaintiffs are also wrong that their desire for this evidence trumps the Legislators' centuries-old privilege. There is no unique, federal interest sufficient to overcome the common-law legislative privilege. This is not a criminal prosecution (the only context in which the Supreme Court has held legislative privilege is overcome). Moreover, like the claims in *Lee*, *Alviti*, and *Hubbard*, plaintiffs' claims do not

---

[1] Because the United States admits (at 2) that it is functionally an amicus, this reply focuses on plaintiffs' arguments. The United States' arguments fail for the same reasons as well as those discussed in the opening brief regardless of whether they are reiterated herein.

depend on direct evidence of the intent of these *Legislators*. Instead, the Supreme Court has required plaintiffs prove the intent of the *Legislature*, which can be done through circumstantial evidence, without invading legislative privilege, as the Supreme Court held in *Arlington Heights*.

Plaintiffs' response is to offer a version of legislative privilege so enfeebled that it may be jettisoned any time a federal claimant asserts that the discovery is relevant and more convenient than other forms of proof. Plaintiffs also offer a view of the attorney-client privilege that would silo state actors in a way that serves neither the purposes of the privilege nor the good of the public. This Court should follow its sister circuits and the Supreme Court in refusing to dispense with such privileges so cavalierly.

**ARGUMENT**

## I.   This Court Has Jurisdiction.

This Court may review the district court's decision to do away with the Legislators' legislative privilege. Though 28 U.S.C. § 1291 limits appellate jurisdiction to "final decisions," the "Supreme Court has long given § 1291 a practical rather than a technical construction." *Leonard v. Martin*, 38 F.4th 481, 486 (5th Cir. 2022) (quotation marks omitted). As a result, certain "collateral rulings" are "immediately appealable" if they: "(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) [would] be effectively unreviewable on appeal from a final judgment." *Id.* (quoting *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 448 (5th Cir. 2019)).

Each of these elements is met here. To accept plaintiffs' contrary arguments, this Court would have to violate the rule of orderliness and split with the Eleventh Circuit.

## A.  This appeal falls within the collateral-order doctrine.

The district court's order meets the elements of the collateral-order doctrine. *First*, "the district court's discovery order was conclusive on [the Legislators], such that failure to comply with it may result in sanctions against" the Legislators or their attorneys. *Whole Woman's Health v. Smith*, 896 F.3d 362, 367 (5th Cir. 2018). Indeed, the district court has *already* threatened to sanction counsel if the Legislators do not prevail here. ROA.10461.

*Second*, this appeal addresses an "important question[] separate from the merits" of the underlying litigation. *Smith*, 896 F.3d at 367. Here, the Legislators are third parties to the litigation, and their privilege assertions are independent of any merits ruling: whatever test this Court adopts to evaluate legislative privilege or waiver in this case will have different legal elements than those applied to claims under the Voting Rights Act or the Constitution. *Cf. id.*

*Third*, "the consequence of forced discovery here is 'effectively unreviewable' on appeal from the final judgment"—a judgment to which these Legislators would not be party. *Id.* The "'decisive consideration' of the 'effectively unreviewable' analysis concerns 'whether delaying review until the entry of final judgment 'would imperil a substantial public interest' or 'some particular value of a high order.'" *Vantage*, 913 F.3d at 449 (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107 (2009)). Such a situation is present "where the order at issue involves an asserted

right the legal and practical value of which would be destroyed if it were not vindicated before trial." *Leonard*, 38 F.4th at 486 (quotation marks omitted).

The legal and practical value of the Legislators' privilege would be imperiled if not vindicated now. After all, if the district court's order stands, these documents will be disseminated to (at least) plaintiffs, their counsel, and their co-counsel in the consolidated actions. Such dissemination vitiates the privilege and "cannot be undone" once the documents are released. *Vantage*, 913 F.3d at 448.

Moreover, delaying review would "imperil a substantial public interest" or "some particular value of a high order." *Id.* at 449. For centuries, the legislative privilege has "protect[ed] 'against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts'" and has "preclude[d] any showing of how [a legislator] acted, voted, or decided." *United States v. Helstoski*, 442 U.S. 477, 489 (1979) (citation omitted). At the federal level, it reflects the principle that it is "not consonant with our scheme of government" of separation of powers "for a court to inquire into the motives of legislators." *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951). Though not identical, federalism creates an analogous vertical separation of powers. And although the Speech and Debate Clause does not apply to state legislators, courts have held that "principles of comity" and "the interests in legislative independence" underlying that Clause dictate that, absent a compelling federal interest, state legislators receive the same privileges in federal court. *Alviti*, 14 F.4th at 87 (quoting *United States v. Gillock*, 445 U.S. 360, 373 (1980)). This rule both "allow[s] duly elected legislators to discharge their public duties without concern of adverse consequences outside the ballot box" and

"minimiz[es] the 'distraction'" associated with civil discovery. *Lee*, 908 F.3d at 1187 (quoting *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975)). Deferring review of the district court's order would frustrate these "substantial public interests," *Vantage*, 913 F.3d at 449, by straining federal-state comity and distracting legislators from their public duties.[2]

Because this case meets the elements of the collateral-order doctrine, this Court has jurisdiction to hear this appeal.

## B. Plaintiffs' contrary arguments lack merit.

Although neither plaintiffs nor the United States dispute at least the first element of the collateral-order doctrine, they assert four challenges to the Court's jurisdiction in whole or in part. None has merit.

**1.** Plaintiffs' principal argument (at 16-18) is that *Mohawk* controls this case. It does not. As *Smith* recognized, *Mohawk*, which addressed an appeal brought by the defendant in an action, "does not speak to the predicament of third parties." *Smith*, 896 F.3d at 368. This distinction matters because a third-party "cannot benefit directly" from a later order barring use of the already-obtained information, *id.* at 367-68—as this Court recently reaffirmed in rejecting the same argument pressed by many of the same plaintiffs, *League of United Latin Am. Citizens v. Abbott*, No. 22-

---

[2] For example, Texas's parallel redistricting litigation has featured extensive discovery from Texas legislators and their staff, including nearly forty depositions. *See* Opposition to Motion for Leave to Take Depositions Out of Time, *LULAC v. Abbott*, No. 3:21-cv-00259 (W.D. Tex. July 22, 2022), ECF No. 466 at 2; *accord* Order Granting Motion to Enforce Third-Party Subpoenas, *LULAC v. Abbott*, No. 3:21-cv-00259 (W.D. Tex. July 25, 2022), ECF No. 467 at 4-12.

50407, 2022 WL 2713263, at *1 n.1 (5th Cir. May 20, 2022) ("*LULAC*"). Plaintiffs'
only response (at 19) is to distinguish *Smith* because it involved a discovery order
infringing First Amendment rights, and "the legislative privilege issue simply does
not raise such weighty constitutional concerns." The Court should reject the argu-
ment for three reasons.

*First*, plaintiffs' argument fails on its own terms. The availability of collateral-
order review does not turn on "constitutional concerns." Instead, immediate ap-
peals have been permitted from orders denying absolute, qualified, and sovereign
immunity, as well as orders unsealing a nonparty's confidential business infor-
mation, so long as the class of cases involved implicates "'value[s] of a high order'
or 'substantial public interest.'" *Leonard*, 38 F.4th at 487. As discussed above (at 4),
this case implicates such values.

*Second*, adopting plaintiffs' position would violate the rule of orderliness. As the
United States admits (at 21), this Court held before *Mohawk* that that "immediate
appeal by a governmental entity" is permitted "where the government is not a party
to the lawsuit and asserts some governmental privilege to resist release of the sub-
poenaed material." The propriety of a separate rule for government actors was raised
in *Mohawk*, and the Court expressly took "no view on th[e] issue." 558 U.S. at 113
n.4. Because *Mohawk* makes no "unequivocal" statement displacing this Court's ex-
isting rule, the pre-*Mohawk* cases are still the law of the circuit. *Mercado v. Lynch*, 823
F.3d 276, 279 (5th Cir. 2016).

*Third*, adopting plaintiffs' view would also require the Court to split with the
Eleventh Circuit, which has emphatically rejected plaintiff's argument. *See Hubbard*,

803 F.3d at 1305-07. The court relied on the same line of Fifth Circuit cases establishing that "one who unsuccessfully asserts a governmental privilege may immediately appeal a discovery order where he is not a party to the lawsuit," *id.* at 1305 (citing *inter alia, Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 879 (5th Cir. 1981)). And it specifically rejected the argument that *Mohawk* "overruled" those decisions—noting, correctly, that *Mohawk* "said nothing about the kind of governmental privileges asserted here or any governmental privilege for that matter." *Id.* at 1306-07.[3]

**2.** Plaintiffs next argue (at 22-23) that the district court's order is not separate from the merits of their claims because they want the documents to prove the merits of their claims. But the same is true for *any* collateral-order appeal involving privilege issues. Nevertheless, *Smith* held that an appeal involving a claim of privilege by a non-party "resolves important and very novel issues separate from the merits of the litigation over the Texas statute concerning the disposal of fetal tissue remains." 896 F.3d at 367.

Plaintiffs' reliance on *A-Mark Auction Galleries, Inc. v. American Numismatic Association*, 233 F.3d 895 (5th Cir. 2000), is misplaced. That case had nothing to do

---

[3] This long line of cases belies plaintiffs' insistence (at 21-22) that the Legislators were required to file a petition for writ of mandamus. Should this Court depart from those precedents, the "court has discretion to treat mere appeal as petition for writ of mandamus." *S. Pac. Transp. Co. v. San Antonio, Tex. ex rel. City Pub. Serv. Bd.*, 748 F.2d 266, 270 (5th Cir. 1984). The Court should exercise that discretion here where plaintiffs provided no notice to the Legislators that they intended to ask the Court to depart from longstanding (and recently reaffirmed) precedent before the Legislators filed their opening brief.

with privilege: it involved a "routine discovery dispute between two [private] parties" about the confidentiality of certain business data. *Id.* at 898. And it stands for the unremarkable proposition that such a dispute rarely (if ever) raises "'value[s] of a high order' or 'substantial public interest'" sufficient to justify the disrupting the normal appellate process. *Leonard*, 38 F.4th at 487. Moreover, by the time *A-Mark* was decided, it was already well-established that claims of governmental privilege *did* satisfy the collateral-order doctrine. *E.g.*, *Branch*, 638 F.2d at 878-79. *A-Mark* did not question those cases, and it could not overturn them. *E.g.*, *United States v. Walker*, 302 F.3d 322, 325 (5th Cir. 2002).

**3.**    Plaintiffs also dispute (at 17) whether the Legislators have an alternative means to appeal because they can just disobey the district court's order and appeal any contempt order. This Court did not require that of the appellants in *Smith* or *LULAC*. Nor did the Eleventh Circuit in *Hubbard*, which relied on a long line of this Court's cases. To be sure, both the Supreme Court and this Court have held that a party can obtain appellate review of a denial of a motion to quash by refusing to obey the order and "contest[ing] the validity of the subpoena if he is subsequently cited for contempt on account of his failure to obey." *United States v. Ryan*, 402 U.S. 530, 532 (1971); *accord Piratello v. Philips Elecs. N. Am. Corp.*, 360 F.3d 506, 509 (5th Cir. 2004). But such cases do not arise in the unique context of the denial of third parties' governmental privileges, such as legislative privilege. And "there is a marked difference between requiring a private litigant to submit to a contempt order before seeking appellate relief and requiring [government] officials to do so." *In re SEC ex rel. Glotzer*, 374 F.3d 184, 188 (2d Cir. 2004).

**4.** The United States raises the additional argument (at 23-24) that this Court lacks appellate jurisdiction to review the attorney-client privilege issue under *Mohawk*. But *Mohawk* did not disturb existing law regarding privilege claims from third parties. *Supra* at 5-6. Even if that were not the case, this Court has "pendent appellate jurisdiction" where "the pendent claim would be otherwise unreviewable." *Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1019 (5th Cir. 2022). That is the case here: on appeal after final judgment, the remedy for a district court's improper privilege ruling is "vacating an adverse judgment and remanding for a new trial." *Mohawk*, 558 U.S. at 109. But "a new trial order can hardly avail a third-party witness who cannot benefit directly from such relief." *Smith*, 896 F.3d at 367-68. Thus, because the Legislators are third parties, they cannot otherwise obtain meaningful relief if their privileged documents are disclosed and used in this litigation—particularly as failure to raise attorney-client privilege in the present appeal raising closely related issues might be construed as a waiver. And because the Legislators seek to vindicate significant societal interests in the proper functioning of the legislative process, the Court has jurisdiction to order relief now.

## II. The Legislators Properly Claimed Legislative Privilege Over the Challenged Documents.

The district court was wrong to depart from three of this Court's sister circuits who have applied the legislative privilege to bar third-party discovery of state legislators in constitutional litigation. Appellants' Br. 21-23. Plaintiffs' claims, like those in *Lee*, *Alviti*, and *Hubbard*, do not justify abrogating legislative privilege. They do not even depend upon direct evidence of legislative intent. *Id.* at 23-29. Plaintiffs

nevertheless argue that, in this case, the legislative privilege is either overcome or waived. Both arguments lack merit.

## A. Plaintiffs' desire for discovery cannot overcome the legislative privilege.

Plaintiffs offer several reasons why the legislative privilege should yield to their desire for discovery from the Legislators. Each of their arguments either misapprehends or ignores the Legislators' arguments or relevant precedents.

**1.** Plaintiffs first assert (at 23-27) that this Court has already rejected the Legislators' purported request for an "absolute" privilege in *Jefferson Community Health Care Centers, Inc. v. Jefferson Parish Government*, 849 F.3d 615 (5th Cir. 2017) and *LULAC*, 2022 WL 2713263. As an initial matter, the Legislators have not argued for an "absolute" privilege that may never be overcome. *Contra, e.g.*, LULAC Br. 1, 13, 29. They have acknowledged that legislative privilege is "qualified" as applied to state legislators in the sense that it must yield to a federal criminal investigation or prosecution. Appellants' Br. 22, 30, 32. The Legislators have taken no position on whether there may someday be a civil case where protecting a federal interest requires overcoming the legislative privilege. But this is not such a civil case: *Arlington Heights* itself recognized that bringing an intentional-discrimination claim does not alone justify breaching the privilege. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 & n.18 (1977). Plaintiffs' statutory claim is no more federally significant than the constitutional claim in *Arlington Heights. See also Lee*, 908 F.3d at 1187-88.

Statements in *Jefferson* and *LULAC* that the legislative privilege is "qualified" are, therefore, unhelpful. Neither case explores the nature of that qualification or supplies any guidance about how the legislative privilege applies in a case like this one. Instead, *Jefferson* held that city councilmembers could not use legislative privilege to "bar the adjudication of a claim" because it is an "evidentiary privilege." 849 F.3d at 624. In *LULAC*, the motions panel held that the state legislators had prematurely raised their objections in response to deposition notices rather than to specific questions, *LULAC*, 2022 WL 2713263, at *1. These holdings are inapposite: the Legislators are not seeking to "bar adjudication" of plaintiffs' claims, and they have asserted privilege over specific documents.

**2.**    Plaintiffs largely ignore the three on-point decisions from the First, Ninth, and Eleventh Circuits that limit the ability of plaintiffs to obtain third-party discovery from legislators in private, civil actions. *See* Appellants' Br. 21-23. Plaintiffs' principal response (at 34-36) appears to be that their claim under section 2 of the Voting Rights Act involves more "weighty federal interests" than those at issue in *Lee, Hubbard*, and *Alviti. See also* U.S. Br. 43-44. Yet all three of those cases considered "important federal interest[s]" sounding in the Constitution, *Hubbard*, 803 F.3d at 1312 (First Amendment), that "address[ed] a central concern of the Framers," *Alviti*, 14 F.4th at 88, or of the drafters of the Fourteenth Amendment, *Lee*, 908 F.3d at 1188.

In particular, *Lee*—like plaintiffs' claims—involved "serious allegations" of racial discrimination. 908 F.3d at 1188. The Ninth Circuit nevertheless held that even the assertion of that "constitutional claim," which "directly implicates the government's intent" would not permit the plaintiffs to breach the legislative privilege by

deposing members of the city council. *Id.* Plaintiffs (at 32 n.8) and the United States (at 31) chalk this holding up to the *Lee* plaintiffs' supposed concession that they had enough evidence to prove their claims at summary judgment. But the *Lee* plaintiffs *lost* at summary judgment; the Ninth Circuit only had to address the legislative-privilege issue because plaintiffs were pressing for more discovery. *Lee*, 908 F.3d at 1181.

Regardless, *Lee* did not turn on its procedural posture. It turned on the Ninth Circuit's application of the Supreme Court's holding in *Arlington Heights* that even where the evidence of legislative purpose is "'highly relevant'"—such as a "claim alleging racial discrimination"—compelling legislators to testify "frequently will be barred by privilege." *Lee*, 908 F.3d at 1187-88 (quoting *Arlington Heights*, 429 U.S. at 268). Applying that rule, *Lee* concluded that the equal-protection claim before it was not "within the subset of 'extraordinary instances' that might justify an exception to the privilege." *Id.* at 1188. That holding applies with equal force here. *See* Appellants' Br. 23-29.

**3.**    Ultimately, plaintiffs' argument boils down to the bare assertion that they should have access to these non-party Legislators' documents because the "evidence at issue is relevant to [their] Section 2 claim." LULAC Br. 31. But mere "relevance" cannot be enough to override legislative privilege because—as plaintiffs admit (at 33)—that is also the standard for when evidence is discoverable. Courts—including this one—routinely reject such ephemeral privileges, which are "hardly a privilege at all." *In re Itron, Inc.*, 883 F.3d 553, 562 (5th Cir. 2018); *accord Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981) ("An uncertain privilege, or one which

purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.").

The United States purports (at 39) to impose some heightened relevance requirement by looking to the "centrality" of the issue of intent to a particular claim. But that supposedly heightened requirement is illusory: no element of a cause of action is more central than any other; failure to show any is fatal to a claim. *Cf. Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 235 (5th Cir. 2016). Like plaintiffs' position, such an "exception would render the privilege of little value," *Lee*, 908 F.3d at 188 (quoting *Tenney*, 341 U.S. at 377), and "pretty much unavailable largely whenever it is needed," *Alviti*, 14 F.4th at 88.

**4.** To buttress this argument, plaintiffs look again (at 31-32) to the "qualified" nature of the state legislative privilege. This, however, wrongly assumes there is only one type of qualification. Some privileges—like the deliberative-processes privilege to which United States points (at 38, 45)—are qualified in the sense that they may be overcome on a case-by-case basis if the need for particular evidence outweighs the interest in non-disclosure. *See Jaffee v. Redmond*, 518 U.S. 1, 10 (1996) (psychotherapist-patient privilege); *The N.Y. Times Co. v. Gonzales*, 459 F.3d 160, 169-70 (2d Cir. 2006) (reporter's privilege); *Logan v. Com. Union. Ins. Co.*, 96 F.3d 971, 976 (7th Cir. 1996) (attorney-work product). But others, such as the executive privilege and attorney-client privilege, are qualified in the sense they do not apply in certain categories of cases. *See United States v. Nixon*, 418 U.S. 683, 707 (1974) (criminal-case exception to executive privilege); *United States v. Zolin*, 491 U.S. 554, 562-63 (1989) (crime-fraud exception to attorney-client privilege).

The legislative privilege is qualified in the latter sense. It does not apply in the context of federal criminal investigations or prosecutions. *Gillock*, 445 U.S. at 373. But "[t]his is not a federal criminal investigation or prosecution," *Hubbard*, 803 F.3d at 1312, and the Supreme Court has "drawn the line at civil actions." *Gillock*, 445 U.S. at 373. For that reason, this Court's sister circuits have refused to uncritically extend *Gillock* beyond the criminal context. *See Hubbard*, 803 F.3d at 1311-12; *Alviti*, 14 F.4th at 87-88; *accord Lee*, 908 F.3d at 1186-88; *cf. In re Grand Jury*, 821 F.2d 946, 957 (3d Cir. 1987).

The burden is thus on plaintiffs to establish that this is one of the "extraordinary instances" that could justify a "'substantial intrusion' into the legislative process." *Lee*, 908 F.3d at 1188 (quoting *Arlington Heights*, 429 U.S. at 268 & n.18). Other circuits have left open the possibility that, in such an "extraordinary case," a civil plaintiff might be able to overcome a state legislator's assertion of legislative privilege. *See, e.g.*, *Alviti*, 14 F.4th at 88; *Lee*, 908 F.3d at 1187-88. But they have made clear that such a case would need to "turn[] so heavily on subjective motive or purpose" that breaching the privilege would be the only way to prove the claim. *Alviti*, 14 F.4th at 88. That is, the privilege is *not* dispensed with "whenever a constitutional claim directly implicates the government's intent." *Lee*, 908 F.3d at 1188. To the contrary, because circumstantial evidence of legislative purpose—for example, "statutory text, context, and legislative history"—is often more "reliable" and "probative" of the Legislature's purpose, courts disfavor efforts to obtain "evidence of individual legislators' motives." *Alviti*, 14 F.4th at 90.

Plaintiffs have not met this burden. To the contrary, they concede (at 30-34) that they do not *need* any direct evidence of intent they hope to find in these four Legislators' files. As they must: this Court has held that intentional-discrimination claims are analyzed through the five-factor test articulated in *Arlington Heights*. *Veasey v. Abbott*, 830 F.3d 216, 230-31 (5th Cir. 2016) (en banc). Those factors turn on circumstantial evidence about the Legislature as a whole, including "(1) the historical background of the decision, (2) the specific sequence of events leading up to the decision, (3) departures from the normal procedural sequence, (4) substantive departures, and (5) legislative history." *Id.* at 231. Such analysis does not "require[] direct evidence" from individual legislators. *Id.* at 231 n.13.

Even if direct evidence of subjective legislative intent were needed, probing the files of these four Legislators would not serve as an accurate proxy for uncovering the intent of the Legislature as a whole. After all, circumstantial evidence about the Legislature's intent is considered more reliable because "[w]hat motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it." *United States v. O'Brien*, 391 U.S. 367, 384 (1968). That is why this Court's sister circuits have refused to dispense with the legislative privilege and instead heeded the Supreme Court's "warn[ing] against relying too heavily on" "evidence of individual lawmakers' motives to establish that the legislature as a whole" acted with an improper purpose. *Alviti*, 14 F.4th at 90; *see also Lee*, 908 F.3d at 1185.

**5.**    Plaintiffs offer two responses, neither of which has merit. *First*, plaintiffs insist (at 31) that although *Arlington Heights* allowed indirect evidence of intent, it noted that direct evidence could be "highly relevant." And plaintiffs protest (at 32)

that such evidence is "unlikely to be uncovered elsewhere" because legislators do not announce their intent to discriminate. At the outset, *Brnovich v. Democratic National Committee*, 141 S. Ct. 2321, 2350 (2021), has now fatally undercut plaintiffs' theory of relevance. But even *Arlington Heights* recognized that "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government," which is "usually to be avoided," and "frequently will be barred by privilege." 429 U.S. at 268 & n.18. That is why the Court told factfinders to look to readily available circumstantial evidence. *Id.* at 266-67.

*Second*, plaintiffs contend (at 30, 33) that some documents "reflect far more than just the impressions of these four key legislators" and include "conference committee materials and numerous documents exchanged between unidentified legislators." These legislators are "unidentified," LULAC Br. 33, because (as the district court described) these documents are *not* "exchanges" between legislators but personal "notes," "analysis," and "reports" containing the mental impressions of these individual Legislators. ROA.10421-22, 10426-27; ROA.9513-14. The mental impressions of these four Legislators, contained in their private notes, thus provide no basis for a court to extrapolate the intent of the whole Legislature. *Brnovich*, 141 S. Ct. at 2350; *O'Brien*, 391 U.S. 367 at 384; *Alviti*, 14 F.4th at 90; *Lee*, 908 F.3d at 1184.

**6.** Finally, the United States' presence in this case changes nothing. As the United States concedes (at 2, 5), it did not move to compel documents from the Legislators because its claims "do not require proof of legislative intent." Accordingly,

its only asserted interest is securing a favorable ruling that it can use in "other cases" to defeat the legislative privilege. *Id.* at 5. This does not constitute an overriding federal interest sufficient to displace the legislative privilege here. *Cf. Alviti*, 14 F.4th at 88; *accord Hubbard*, 803 F.3d at 1309 n.10. And again, the Supreme Court has drawn the line at criminal actions involving the United States, not its participation alongside private plaintiffs in civil actions. *Gillock*, 445 U.S. at 373.

## B.  The legislative privilege has not been waived.

Plaintiffs separately argue (at 40-47) that the legislative privilege has been waived for more than seventy documents that were shared with third parties. But this argument misunderstands the broad scope of the legislative privilege in general and its application to communications with the Attorney General and Lieutenant Governor in particular.

1.    The legislative privilege applies whenever a legislator or his agent was "acting in the sphere of legitimate legislative activity." *Tenney*, 341 U.S. at 376. Because the privilege "protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts," *Helstoski*, 442 U.S. at 489 (quotations marks omitted), it "covers . . . legislators' actions in the proposal, formulation, and passage of legislation," *Hubbard*, 803 F.3d at 1308. Critically, that necessarily encompasses "[m]eeting[s] with persons outside the legislature—such as executive officers, partisans, political interest groups, or constituents—to discuss issues that bear on potential legislation . . . [and] assist legislators in the discharge of their legislative duty." *Almonte v. City of Long Beach*, 478 F.3d 100, 107 (2d Cir. 2007). Indeed, "[m]eeting with 'interest' groups, professional or amateur,

regardless of their motivation, is a part and parcel of the modern legislative proce-dures." *Bruce v. Riddle*, 631 F.2d 272, 280 (4th Cir. 1980).[4]

Plaintiffs dismiss (at 28-29, 41-42) the principles announced by the Supreme Court and by this Court's sister circuits because these cases were decided in the con-text of the doctrines of legislative immunity and the federal legislative privilege. But plaintiffs fail to grapple with the authorities demonstrating that this is a distinction without a difference. *See* Appellants' Br. 33-34.

Plaintiffs are unable to refute these principles because it is well established that "[a]lthough the separation-of powers doctrine justifies a broader privilege for Con-gressmen than for state legislators in criminal actions," the state legislative privilege "is similar in origin and rationale to that accorded Congressmen under the Speech or Debate Clause." *Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 732-33 (1980); *see Hubbard*, 803 F.3d at 1307 ("The legislative privilege is im-portant" and "has deep roots in federal common law."). Alongside shared history, Appellants' Br. 19-21, the interests underlying the federal and state privilege are sim-ilar, including the "interests in legislative independence," which "remain[s] rele-vant in the common-law context." *Alviti*, 14 F.4th at 87. And plaintiffs offer no rea-son why the *scope* of the privilege—*i.e.*, the class of documents and communications falling within its ambit—would be different for state lawmakers even if the *applica-bility* of the privilege is narrower (civil but not federal criminal cases). *Gillock*, 445 U.S. at 373.

---

[4] Contrary to plaintiffs' insistence (at 42 n.9), *Bruce* was unanimous.

The same is true of immunity. Immunity and privilege are "corollary" concepts that derive from the same historical tradition and advance the same essential purposes, including safeguarding legislative independence and "minimizing the 'distraction' or 'divert[ing] [legislators'] time, energy, and attention from their legislative tasks to defend the litigation.'" *Lee*, 908 F.3d at 1187. In fact, the two work in tandem: "[l]egislative privilege against compulsory evidentiary process exists to safeguard . . . legislative immunity and to further encourage the republican values it promotes." *EEOC v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011). Thus, the D.C. Circuit has concluded that there is no "difference in the vigor with which the privilege protects against compelling a [legislator's] testimony as opposed to the protection it provides against suit." *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 421 (D.C. Cir. 1995). And the Supreme Court has treated these two concepts as related protections, holding that a legislator "may not be made to answer—either in terms of questions *or* in terms of defending himself from prosecution." *Gravel v. United States*, 408 U.S. 606, 616 (1972) (emphasis added).

**2.**    Plaintiffs make at least three additional errors by maintaining (at 44-47) that the legislative privilege was waived for communications between the Legislators and the Lieutenant Governor or Attorney General.

*First*, plaintiffs assert (at 46), without authority, that the legislative privilege does not protect communications with the Lieutenant Governor—who serves as President of the Texas Senate—or the Attorney General even when they are performing legislative functions. But the Supreme Court has held "that officials outside the legislative branch are entitled to legislative immunity when they perform

legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998). This holding inheres in the recognition that, "[w]hether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* at 54. That is why the Eleventh Circuit has held that "[t]he privilege protects the legislative process itself, and therefore covers both governors' and legislators' actions in the proposal, formulation, and passage of legislation." *Hubbard*, 803 F.3d at 1308. And it is why the plaintiffs in *Alviti* did not even bother to contest that the legislative privilege applied to non-legislators performing legislative functions. *See Alviti*, 14 F.4th at 87.

*Second*, plaintiffs also argue (at 46-47) that even if the privilege could apply to the Lieutenant Governor or the Attorney General, they were not performing legislative functions in making the communications at issue. But by the district court's own description, the communications with the Lieutenant Governor's attorney (Alix Morris) and OAG attorney (Jonathan White) all uniformly concern the content of draft legislation. ROA.10419-20, 10434, 10436-49. Communications concerning "the proposal, formulation, and passage of legislation" fall within the core of the legislative function and privilege. *Hubbard*, 803 F.3d at 1308.

*Third*, plaintiffs dismiss (at 45, 49-50) this argument as academic because a subset of these communications also include Alan Vera or Elizabeth Alvarez. But Vera served as a source of information for Senator Bettencourt in his work in formulating

S.B. 1—even if he was not formally employed by the Senator. ROA.9520.[5] Alvarez is an attorney who was retained by certain legislators to provide legal advice regarding S.B. 1. ROA.9515. She thus acted as an agent of her employer for the purposes of—and does not waive—the legislative and attorney-client privilege.

## III. The Legislators Properly Claimed Attorney-Client Privilege Over the Subset of Documents Still at Issue.

The district court also erred by holding that the Legislators waived the attorney-client privilege because the Legislators' attorneys conferred with attorneys for the Lieutenant Governor, Attorney General, and Texas Legislative Council ("TLC"). As the Legislators have explained (at 40-41), at least OAG and TLC served as counsel for the Legislators. Because another privilege protects communications with the Lieutenant Governor, his counsel's presence also does not destroy the attorney-client privilege. *Restatement (Third) of the Law Governing Lawyers* § 71 cmt. b (2000).

Even if that were untrue, the common-interest doctrine is "an exception to the rule that no privilege attaches to communications between a client and an attorney in the presence of a third person," *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007), and it "applies to communications made by the client or the client's lawyer to a lawyer representing another in a matter of common interest," *Cavallaro v. United States*, 284 F.3d 236, 249 (1st Cir. 2002) (quotation marks omitted). The common-interest doctrine applies here given this group's shared interest in passing legislation that would survive the litigation that the Legislators knew

---

[5] If the Court disagrees, it should order the production of only documents to which Vera was copied.

would follow. Plaintiffs respond (at 47-53) by arguing that no attorney-client relationship has been established between the Legislators, Lieutenant Governor, Attorney General, and TLC and, regardless, that this group possessed no common interest. Both arguments are erroneous.

**A.** As an initial matter, plaintiffs either misapprehend or misstate the Legislators' argument regarding the common-interest doctrine. In the district court, plaintiffs challenged whether the Legislators had established the applicability of the privilege based on the Legislators' relationship to these lawyers, ROA.9113-16, but the court rejected that argument and ordered the documents produced based on waiver, ROA.10394-95. In response to that order (which plaintiffs did not cross-appeal), the Legislators have argued (at 41-46) that the presence of attorneys from TLC, the Lieutenant Governor's office (Alix Morris), or OAG (Jonathan White) does not destroy the confidentiality of those communications under the common-interest doctrine. As plaintiffs have not responded to those arguments, they should be deemed unopposed. *United States v. Guillen-Cruz*, 853 F.3d 768, 777 (5th Cir. 2017).

The errors in plaintiffs' arguments are especially apparent regarding the TLC. That agency is charged with, among other things, "provid[ing] legal advice and other legal services to the legislature" and "assist[ing] the legislature in drafting proposed legislation," Tex. Gov't Code § 323.006(a)(7)-(8), which created the necessary attorney-client relationship, *see* Appellants' Br. 42. Plaintiffs say (at 48-49), that there is no "proof" that communications with the TLC occurred within the context of an attorney-client relationship. But even the district court's description of these communications reveals that a TLC attorney (Adam Moses) was on several e-mails

concerning the content of election-related legislation—which is likely why the district court relied on waiver. ROA.10419-20, 10436-41, 10445.

**B.** Plaintiffs next argue (at 51) that the common-interest doctrine is inapplicable for three reasons: (1) it was uncertain at the time of the communications that S.B. 1 would pass, (2) the Legislators themselves could not be subject to suit, and (3) there was no "palpable threat of litigation." None of these arguments has merit.[6]

*First*, plaintiffs cite no authority for the proposition that legislators cannot have privileged communications until passage of legislation is certain. Nor would such a rule make sense as certainty is not obtained until the Governor signs the bill. Limiting the common-interest doctrine to that time would make it unavailable when it is needed most—namely when advice about the effects and legal status of legislation could affect decisionmaking. That S.B. 1 was debated across multiple sessions does not change this: because Texas's legislative sessions are short, legislation not infrequently takes multiple attempts to achieve the necessary majorities.

*Second*, plaintiffs also suggest (at 51) that the common-interest doctrine is inapplicable because absolute immunity prevents the Legislators from being sued. This ignores that the *State* is routinely named as the defendant (rightly or wrongly) in litigation regarding election legislation. *E.g.*, *Abbott v. Mexican Am. Legislative Caucus,*

---

[6] Plaintiffs also assert (at 52-53) that the Legislators "forfeited" reliance on the common-interest doctrine. Paradoxically, the United States asserts (at 51) that they forfeited any reliance on a direct attorney-client relationship by relying on the common-interest doctrine. Both are wrong. The interrelated issues were properly raised, ROA.9460-63, resolved, ROA.10394-95, and appealed to this Court.

*Tex. H.R.*, No. 22-0008, 2022 WL 2283221, at \*10 (Tex. June 24, 2022). And it is the Legislature who acts as the State in passing legislation. Plaintiffs again cite no authority for the proposition that legislators' absolute immunity from suit excludes the *State* from the protections of the common-interest doctrine.

*Third*, the Legislators had more than a "mere awareness" that S.B. 1 "might some day result in litigation." *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 711 (5th Cir. 2001). For decades, Texas was subject to preclearance under section 5 of the Voting Rights Act, meaning that any change in its election laws would be tangled up in litigation for years. *See Davis v. Abbott*, 781 F.3d 207, 209 (5th Cir. 2015). *Contra* LU-LAC Br. 51. Although that regime ended with *Shelby County v. Holder*, 570 U.S. 529 (2013), efforts to "bail in" Texas have not. Appellants' Br. 45. Texas legislators do not close their eyes to this reality; the district court should not have done so either.

## Conclusion

The Court should reverse the district court's order.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Judd E. Stone II
Solicitor General

Brent Webster
First Assistant Attorney General

/s/ Lanora C. Pettit
Lanora C. Pettit
Principal Deputy Solicitor General
Lanora.Pettit@oag.texas.gov

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

William F. Cole
Assistant Solicitor General

Counsel for Appellants

## CERTIFICATE OF SERVICE

On July 27, 2022, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Lanora C. Pettit
LANORA C. PETTIT

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 6,479 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rules 27(d)(1)(E) and 32(a)(5) and the type style requirements of Rules 27(d)(1)(E) and 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Lanora C. Pettit
LANORA C. PETTIT