# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

LEAGUE OF UNITED LATIN
AMERICAN CITIZENS, *et al.*,

    *Plaintiffs*,

EDDIE BERNICE JOHNSON, *et al.*,

    *Plaintiff-Intervenors*,

v.

GREG ABBOTT, *in his official capacity as Governor of the State of Texas*, *et al.*,

    *Defendants*.

§
§
§
§
§
§
§
§
§
§
§
§
§
§

**EP-21-CV-00259-DCG-JES-JVB**
**[Lead Case]**

---

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.

STATE OF TEXAS, *et al.*

    *Defendants*.

§
§
§
§
§
§
§
§
§

**Case No. 3:21-CV-00299-DCG-JES-JVB**
**[Consolidated Case]**

## <u>ORDER</u>

Before the Court is the United States' motion to enforce third-party subpoenas *duces tecum*

against Texas legislators, their staff, and a staff member of the Texas Legislative Council seeking

both tangible and electronically stored information.[1,2] Dkts. 351; 351-2 (Ex. 1: Subpoenas). The Court grants the motion.

## I.    BACKGROUND

The United States filed its Complaint against the State of Texas and Texas Secretary of State John Scott on December 6, 2021. Complaint, *United States v. Texas*, No. 3:21-cv-00299 (W.D. Tex. 2021) (Dkt. 1). The Court later consolidated that action with the above-captioned lead case.

Discovery is ongoing. In February and March, the United States served subpoenas *duces tecum* on the Legislators, seeking documents including redistricting proposals, legislative communications, and data used during the redistricting process. *See* Dkt. 351-2. In response, the Legislators produced roughly 1,000 documents (excluding form letters and similar submissions) and submitted privilege logs. *See* Dkt. 351-3 (Ex. 2: Privilege Logs). On May 10, the United States met and conferred with counsel for the Legislators and, on May 27, counsel for the Legislators submitted updated privilege logs but no additional documents. *See* Dkt. 351-4 (Ex. 3: Updated Privilege Logs). The updated privilege logs contain almost 2,000 entries, including redistricting data, communications with Members of Congress and other outsiders, retainers, invoices, press documents, and other non-privileged items the United States argues are not privileged. *Id.*

---

[1] The persons served are Representative Steve Allison, Mark Bell, Representative Tom Craddick, Representative Philip Cortez, Darrell Davila, Jay Dyer, Adam Foltz, Colleen Garcia, Representative Ryan Guillen, Senator Joan Huffman, Representative Todd Hunter, Representative Jacey Jetton, Representative Ken King, Koy Kunkel, Representative Brooks Landgraf, Representative J.M. Lozano, Anna Mackin, Representative Geanie Morrison, Representative Andrew Murr, Sean Opperman, Lieutenant Governor Dan Patrick, Speaker Dade Phelan, and Julia Rathgeber. The Court hereinafter refers to the group collectively as "the Legislators."

[2] On July 19, the United States notified the Court it no longer intends to depose House Speaker Dade Phelan. Dkt. 446.

The United States now moves to enforce the subpoenas, arguing the Legislators have withheld hundreds of non-privileged documents in response to the subpoenas, resulting in disclosure of merely one-third[3] of their responsive documents. Dkt. 351 at 1; *see also* Dkt. 351-7 (Ex. 6: Challenged-Document Index).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 45(d)(2)(B)(i) allows a party who has served a subpoena to "move the court . . . for an order compelling production." In turn, Rule 45(e)(2)(A) mandates that "a person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must (i) expressly make the claim; and (ii) describe the nature of the withheld documents . . . in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."

The party withholding documents has the burden to establish they are privileged or protected. *See Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985). To assert attorney-client privilege, a subpoena recipient "must prove: (1) that he made a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) (emphasis removed and citation omitted). To establish work-product protection, a recipient must show the document was created "in anticipation of litigation" and not the mere possibility of a legal challenge. *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981) (citations omitted).

To assert legislative privilege, a recipient must show that a communication "contains or involves opinions, motives, recommendations or advice about legislative decisions between

---

[3] The Legislators contest this figure, pointing out in their response brief that they have produced 8,249 of 10,180 responsive documents (81%) and the entire bill file of 3,248 documents (18,874 pages). Dkt. 379 at 2.

legislators or between legislators and their staff." *Jackson Mun. Airport Auth. v. Bryant*, No. 3:16-cv-246, 2017 WL 6520967, at *7 (S.D. Miss. Dec. 19, 2017) (citations omitted). Legislative privilege is "waived" as to "communications with any outsider." *Perez v. Perry* (*Perez I*), No. 5:11-cv-360, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014) (three-judge court).

## III. DISCUSSION

The United States argues the Legislators have inappropriately (1) asserted attorney-client privilege, work-product protection, and state legislative privilege over factual data; (2) claimed work-product protections over materials not prepared in anticipation of litigation, including documents drafted almost two decades ago; and (3) advanced an overbroad conception of the common-law state legislative privilege, withholding even communications with members of the public. Dkt. 351 at 1. The Court first addresses legislative privilege, and finding it does not shield the entirety of the responsive documents, next turns to attorney-client privilege and work-product protections to determine whether the documents are shielded from discovery.

### A. State Legislative Privilege

"Legislative privilege is an evidentiary privilege, 'governed by federal common law, as applied through Rule 501 of the Federal Rules of Evidence.'" *La Union Del Pueblo Entero v. Abbott* (*LUPE*), No. SA-21-CV-00844-XR, 2022 WL 1667687, at *2 (W.D. Tex. May 25, 2022) (quoting *Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017)). "While the common-law legislative immunity for state legislators is absolute, the legislative privilege for state lawmakers is, at best, one which is qualified." *Jefferson Cmty. Health Care Ctrs.*, 849 F.3d at 624 (quoting *Perez I*, 2014 WL 106927, at *1). "Legislative privilege protects legislators from possible prosecution by an unfriendly executive and conviction by a hostile judiciary, and is one means for ensuring the independence of the legislature . . . . [I]n other words, it serves to preserve the constitutional structure of separate, coequal, and independent

branches of government." *Gilby v. Hughes*, 471 F. Supp. 3d 763, 766–67 (W.D. Tex. 2020) (cleaned up). The privilege applies to "any documents or information that contains or involves opinions, motives, recommendations or advice about legislative decisions between legislators or between legislators and their staff." *Jackson Mun. Airport Auth.*, 2017 WL 6520967, at *7 (quoting *Hall v. Louisiana*, No. CIV.A. 12-657-BAJ, 2014 WL 1652791, at *10 (M.D. La. Apr. 23, 2014)).

"The privilege does not apply, though, to 'documents containing factually based information used in the decision-making process or disseminated to legislators or committees, such as committee reports and minutes of meetings,' or 'the materials and information available [to lawmakers] at the time a decision was made.'" *LUPE*, 2022 WL 1667687, at *2 (quoting *Comm. for Fair & Balanced Map v. Ill. State Bd. of Elections*, No. 11 C 5065, 2011 WL 4837508, at *9 (N.D. Ill. Oct. 11, 2011) (internal quotations and citations omitted)). Legislative privilege "must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." *Perez I*, 2014 WL 106927, at *1 (internal quotation marks omitted).

The Legislators ask this Court to hold the United States' motion in abeyance pending the resolution of a recent district-court decision that concluded that legislative privilege did not shield legislators' documents from discovery. Dkt. 379 at 11 (citing *LUPE*, 2022 WL 1667687). The Legislators contend that the pending appeal will necessarily clarify the ground rules for legislative privilege in the Fifth Circuit, beyond the dicta generally describing the nature of the privilege in *Jefferson Community Health Care Centers. See* 849 F.3d at 624. This would be, the Legislators argue, the "most prudent course" so as to "avoid[] the unseemly possibility that legislators turn over documents that the Fifth Circuit clarifies are privileged." Dkt. 379 at 12.

We disagree and decline to stay the motion. The Legislators repeatedly argue that the discussion of state legislative privilege in *Jefferson Community Health Centers* is mere dicta, Dkt. 379 at 11–13, but "[a]lternative holdings are not dicta and are binding in this circuit," *Jaco v. Garland*, 24 F.4th 395, 406 n.5 (5th Cir. 2021). This Court has also already declined to stay this litigation to await outside appeals, *See* Dkt. 246, and the stay in *LUPE* does not suggest a "strong showing" that reversal is likely, *Freedom from Religion Found., Inc. v. Mack*, 4 F.4th 306, 311 (5th Cir. 2021) (internal citation and quotation marks omitted), or that the Fifth Circuit is likely to depart from *Jefferson Community Health Care Centers*. *See also Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) ("[O]ne panel of this court cannot overrule the decision of another panel; such panel decisions may be overruled only by a subsequent decision of the Supreme Court or by the Fifth Circuit sitting *en banc*.").

Thus, the Court first addresses whether the legislative privilege applies to groups of documents not integral to the legislative process and to those documents shared with legislative outsiders, and then confronts the remaining core legislative-privilege claims under the *Rodriguez* five-factor test.

### 1. Documents not integral to the legislative process

Legislative privilege only "protects 'integral steps' in the legislative process and does not extend to commentary or analysis following the legislation's enactment." *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 343 (E.D. Va. 2015); *see also League of Women Voters of Mich. v. Johnson*, No. 17-14148, 2018 WL 2335805, at *6 (E.D. Mich. May 23, 2018). Accordingly, the documents created after enactment of the redistricting legislation that the Legislators seek to shield under the aegis of legislative privilege must be produced. Dkt. 351-7 at 310.

The same can be said for the administrative documents and materials that the Legislators seek to shield. Dkt. 351-7 at 311–14. These documents include schedules, calendar entries, retainer agreements, engagement letters, and employment communications, none of which are sufficiently tied to the substance of legislation to fall within the privilege. *Id.*; *see also generally Favors v. Cuomo* (*Favors I*), No. 11-CV-5632 DLI RR, 2015 WL 7075960, at *8 (E.D.N.Y. Feb. 8, 2015) (compiling a list of "non-legislative" and "legislative" activities); *see, e.g.*, *BBC Baymeadows, LLC v. City of Ridgeland*, No. 3:14-cv-676, 2015 WL 5943250, at *6 (S.D. Miss. Oct. 13, 2015) (holding engagement letter did not fall within legislative privilege); *Kukla v. Vill. of Antioch*, No. 85 C 7946, 1987 WL 9596, at *2 (N.D. Ill. Apr. 15, 1987) (finding village board's employment hearing was not "legislative" but rather held in board's capacity as employer and thus legislative privilege did not apply).

Nor does legislative privilege shield the almost 700 documents listed in the index containing "factually based information used in the decision-making process or disseminated to legislators or committees." *LUPE*, 2022 WL 1667687, at *2 (citation omitted); Dkt. 351-7 at 315–56. Examples of such documents include "committee reports," "minutes of meetings," "materials and information available [to lawmakers] at the time a decision was made," *LUPE*, 2022 WL 1667687, at *2 (citation omitted), and "alternative maps considered during the redistricting process," *LULAC v. Abbott*, No. EP-21-CV-00259-DCG-JES-JVB, 2022 WL 1570858, at *2 (W.D. Tex. May 18, 2022). *See also, e.g.*, *League of Women Voters of Mich.*, 2018 WL 2335805, at *7 (ordering the production of "strictly factual materials and information available to lawmakers at the time the legislation was enacted").

### 2. Third-party documents

The Legislators assert legislative privilege over documents from and communications with third parties. Dkt. 351-7 at 291–301. The United States argues the Legislators must disclose documents exchanged with Members of Congress and congressional staff; counsel for nearly all Republican members of the Texas delegation to the U.S. House of Representatives, who provided the initial draft of the congressional map to Senator Joan Huffman, Chair of the Senate Special Committee on Redistricting; state executive-branch officials; consultants; and members of the public, among others. Dkt. 351 at 10. The Legislators urge the Court to reject arguments that legislative privilege does not extend to documents shared with executive-branch officials or "outsiders"—whom the Legislators argue are not in fact true outsiders to the legislative process. Dkt. 379 at 16.

The Court disagrees that the scope of the privilege is as broad as the Legislators claim. Legislators cannot cloak conversations with executive-branch officials, lobbyists, and other interested outsiders in their privilege. *Perez I*, 2014 WL 106927, at \*2. Legislative privilege focuses on "candor in . . . internal exchanges." *United States v. Gillock*, 445 U.S. 360, 373 (1980). And the case law the Legislators lean on—which uniformly addresses immunity, not privilege— is not persuasive. *See, e.g.*, *Baraka v. McGreevey*, 481 F.3d 187, 196–97 (3d Cir. 2007); *Almonte v. City of Long Beach*, 478 F.3d 100, 107 (2d Cir. 2007); *Bruce v. Riddle*, 631 F.2d 272, 280 (4th Cir. 1980). Accordingly, legislative privilege will not shield these documents shared with persons outside the Texas legislature or legislative-staff ambit.

### 3. Balancing of interests

The United States next challenges the Legislators' assertion of privilege over a tranche of documents relating to the 2021 congressional redistricting cycle at issue in this case. Dkt. 351-7 at

357–62. The court finds these documents to be at the core of legislative privilege, detailing mental impressions on the legislative process, revealing legislative judgments as to alternative maps, and implicating privileged thoughts and opinions. *Id.* "Thus, the Court will weigh the *Rodriguez* factors to determine if they should nevertheless be disclosed." *LUPE*, 2022 WL 1667687, at *6.

"[I]n determining whether and to what extent the legislative privilege must be honored, the Court 'must balance the extent to which production of the information sought would chill the [Texas] Legislature's deliberations . . . against any other factors favoring disclosure.'" *Id.* at *2 (quoting *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 100 (S.D.N.Y. 2003)).

> The *Rodriguez* court articulated five factors to consider in making such a determination: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable."

*Id.* (citing *Rodriguez,* 280 F. Supp. 2d at 101); *see also Veasey v. Perry*, No. 2:13-CV-193, 2014 WL 1340077, at *2 (S.D. Tex. Apr. 3, 2014) (applying the *Rodriguez* five-factor analysis); *Perez I*, 2014 WL 106927, at *2 (acknowledging same).

The first factor weighs in favor of disclosure. The United States alleges intentional-discrimination claims on the basis of race, color, or membership in a language-minority group in violation of Section 2 of the Voting Rights Act. Dkt. 318 ¶ 197. The evidence the United States "seek[s] to compel is highly relevant in proving [its] Section 2 claim, as the documents reflect the State Legislators' contemporaneous thoughts and motivations in drafting and enacting [the 2021 Congressional Plan]." *LUPE*, 2022 WL 1667687, at *6; *see also Jefferson Cmty. Health Ctrs.*, 849 F.3d at 624 (holding that the existence of legislative privilege does not bar adjudication of claims to which legislators' "motivations and thought processes" are relevant); *Jones v. City of Coll. Park*, 237 F.R.D. 517, 521 (N.D. Ga. 2006) (finding that where Congress has placed "government intent"

at the heart of a cause of action, the United States "has a compelling interest in discovery of evidence of such intent").

"Here, '[t]he state government's role in the events giving rise to the present litigation is central to [the United States'] claims.'" *Bethune-Hill*, 114 F. Supp. 3d at 339 (quoting *Page v. Va. State Bd. of Elections*, 15 F. Supp. 3d 657, 666 (E.D. Va. 2014)). "Unlike other cases, where . . . the legislative privilege may be employed to 'prevent [the government's] decision-making process from being swept up unnecessarily into the public domain,' this is a case where the decision making process 'is the case.'" *Id.* (quoting *Comm. for Fair & Balanced Map*, 2011 WL 4837508, at *8). "[A]ny documents containing the opinions and subjective beliefs of legislators or their key advisors would be relevant to the broader inquiry into legislative intent and the possibility of racially motivated decisions that were not adequately tailored to a compelling government interest." *Page,* 15 F. Supp. 3d at 666.

The second factor, the availability of other evidence, also weighs in favor of disclosure. Litigants may prove a Section 2 claim by showing discriminatory intent, *LULAC v. Abbott*, No. 3:21-CV-259-DCG-JES-JVB, 2022 WL 1631301, at *12–13 (W.D. Tex. May 23, 2022), which requires a "sensitive inquiry into such circumstantial and direct evidence of intent as may be available,"[4] *see Veasey*, 830 F.3d at 230–31 (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977)). "While recognizing that candid discussions among legislators may not be the only evidence that would allow the United States to prove its discriminatory intent claim, . . . the second factor weighs slightly in favor of disclosure given the practical reality that officials 'seldom, if ever, announce on the record that they are pursuing a particular course of action because of their desire to discriminate against a racial minority.'"

---

[4] Litigants may also prevail on a Section 2 claim by demonstrating that legislation has a discriminatory effect. *Veasey v. Abbott*, 830 F.3d 216, 243 (5th Cir. 2016) (en banc).

*Veasey v. Perry*, No. 2:13-CV-193, 2014 WL 1340077, at *3 (S.D. Tex. Apr. 3, 2014) (quoting *Smith v. Town of Clarkton*, 682 F.2d 1055, 1064 (4th Cir. 1982)).

The third factor, the seriousness of the litigation and the issues involved, strongly favors disclosure. "The federal government's interest in enforcing voting rights statutes is, without question, highly important." *Id.* at *2. "[I]t is indisputable that racial [discrimination] and malapportionment claims in redistricting cases 'raise serious charges about the fairness and impartiality of some of the central institutions of our state government,' and thus counsel in favor of allowing discovery." *Favors v. Cuomo* (*Favors II*), 285 F.R.D. 187, 219 (E.D.N.Y. 2012) (citing *Rodriguez,* 280 F. Supp. 2d at 102).

Factor four, the role of the government in the litigation, also strongly favors disclosure. Here, "the state government's role is direct. The motive and intent of the state legislature when it enacted [the 2021 Congressional Plan] is the crux of this Voting Rights Act case." *Veasey*, 2014 WL 1340077, at *2. "[T]he Legislators' role in the allegedly unlawful conduct is 'direct,' and therefore 'militate[s] in favor of disclosure.'" *Favors I*, 2015 WL 7075960, at *11 (quoting *Comm. for Fair & Balanced Map*, 2011 WL 4837508, at *8.

The fifth factor, the possibility of future timidity by government employees, weighs against disclosure as "the need to encourage frank and honest discussion among lawmakers favors nondisclosure." *Comm. for Fair and Balanced Map*, 2011 WL 4837508, at *8. "[C]ourts have long recognized that the disclosure of confidential documents concerning intimate legislative activities should be avoided." *Veasey*, 2014 WL 1340077, at *3. "Even so, 'where important federal interests are at stake, the principle of comity, which undergirds the protection of legislative independence, yields.'" *LUPE*, 2022 WL 1667687, at *7 (quoting *Benisek v. Lamone*, 263 F. Supp. 3d 551, 555

(D. Md. 2017) (internal quotation marks omitted)).[5] "[T]he Court finds that the need for accurate fact finding outweighs any chill to the legislature's deliberations." *LUPE*, 2022 WL 1667687, at *7.

Accordingly, the Court finds that the overall balance of factors weighs in favor of disclosure. The challenged documents, Dkt. 351-7 at 357–62, must be produced. Additional documents falling into their own category will also be produced: talking points, draft public statements, and media strategy documents, Dkt. 351-7 at 303–309, and the standalone document identified as DOC_0001659, Dkt. 351-7 at 302.[6] Because certain of these documents may potentially be shielded by attorney-client privilege or work-product protections, the Court continues its discussion below.

### B. Attorney-client Privilege

The United States argues the Legislators have improperly withheld documents far beyond the scope of attorney-client privilege. Dkt. 351 at 4. The Legislators have asserted attorney-client privilege over nine subsets of documents: (1) documents containing redistricting data and related factual information, Dkt. 351-7 at 1–25; (2) documents passed from client to lawyer, *id.* at 26–47; (3) logistical documents, *id.* at 48; (4) talking points, *id.* at 49–50; (5) retention agreements, *id.* at 51–52; (6) documents not mentioning legal advice, *id.* at 53–71; (7) documents relating to outside counsel Butler Snow LLP, *id.* at 72–85; (8) documents relating to outside mapping consultants, *id.*

---

[5] The Court notes disclosure of legislative documents in past Voting Rights Act litigation has not rendered Texas officials "timid." *See, e.g.*, *Veasey*, 2014 WL 1340077, at *2; *see generally* U.S. Amended Complaint, Dkt. 318 ¶¶ 19–20, 180 (noting Texas's lengthy history of discrimination in redistricting and voting rights).

[6] The Legislators have also asserted the deliberative-process privilege as grounds to withhold the document, but that privilege only applies to "the internal decision-making process of the executive branch." *Gilby*, 471 F. Supp. 3d at 767.

at 86–91; and (9) documents relating to third parties, *id.* at 92. The Court addresses the groups below.

### 1. Documents containing redistricting data and related factual information

By way of example, the United States points out that Senator Huffman, her staff, and Adam Foltz[7] asserted privilege over 300 documents—described only as "confidential data" in the privilege log—concerning House and congressional redistricting proposals. Dkts. 351 at 4; 351-7 at 1–25. The United States contends the privilege "does not protect disclosure of the underlying facts," and marshals a litany of cases in support of this proposition. *Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981); *see BDO USA, L.L.P.*, 876 F.3d at 696 (limiting the privilege to materials "generated for the purpose of obtaining or providing legal assistance" (citation omitted)); *Ohio A. Philip Randolph Inst. v. Smith*, No. 1:18-cv-357, 2018 WL 6591622, at *3 (S.D. Ohio Dec. 15, 2018) (three-judge court) (requiring disclosure of "facts, data, and maps").

The Legislators counter that the redistricting documents concerning redistricting proposals are not merely factual, but that they are communications. Dkt. 379 at 3. The Legislators readily agree with the United States that attorney-client privilege does not protect the disclosure of underlying facts, but disagree with the United States' contention that these documents contain only unprivileged factual data. *Id.* The United States' qualified characterization of these documents as "*[c]ontaining* factual information," the Legislators argue, reveals they are more than purely factual. *Id.* (emphasis added). Further, the Legislators argue, "[e]very document, indeed every human communication, will necessarily *contain* factual information." *Id.* In support, the Legislators propose several examples of how a document containing factual information might

---

[7] Foltz is a Texas Legislative Council employee selected by Representative Hunter, Chair of the House Redistricting Committee, to work on the House map. *See* Dkt. 351-6 at 18–19 (Ex. 5: House Redistricting Comm. Hearing Tr. (Oct. 4, 2021)).

well also contain "data further manipulated for purposes of describing or evaluating a particular proposal, to thereby effectuate a privileged communication between client and attorney." *Id.* at 4. According to the Legislators, revealing the analyses or data also reveals the privileged communication.

The United States' argument hews closer to the mark. Blanket protection for these documents as "communications" absolves a subpoena recipient asserting attorney-client privilege of proving (1) he made a confidential communication, (2) to a lawyer or lawyer's subordinate, (3) for the *primary* purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding. *BDO USA, L.L.P.*, 876 F.3d at 695. To hold otherwise reduces the principle that the privilege does not shield underlying facts to a nullity and flies in the face of considerable authority. *See, e.g.*, *Ohio A. Philip Randolph Inst.*, 2018 WL 6591622, at *3 (requiring production of "facts, data, and maps" sent to counsel); *see also In re Fin. Oversight & Mgmt. Bd.*, 386 F. Supp. 3d 175, 184 (D.P.R. 2019).[8] The documents are not categorically shielded by attorney-client privilege. To the extent any document has annotations or notes implicating bona fide legal advice or containing privileged material, then the Legislators must produce a redacted version. *See, e.g.*, *Ill. Cent. R.R. Co. v. Harried*, No. 5:06-cv-160, 2010 WL 583938, at *2 (S.D. Miss. Feb. 16, 2010).

## 2. Documents passed from client to lawyer

The second group of documents, labeled as documents passed from client to lawyer, largely corresponds to group one—except the documents in this group appear to have also been sent to counsel. Dkt. 351-7 at 26–47. That these data—admittedly "created, received, and/or gathered" for "the purpose of working on redistricting legislation"—were "[a]lso used by counsel," *id.*, does

---

[8] The Legislators have not established that the legislative documents at issue were created at the request of counsel or made "to aid in the providing [of] needed legal advice." *Butler v. Am. Heritage Life Ins. Co.*, No. 4:13-cv-199, 2016 WL 367314, at *6 (E.D. Tex. Jan. 29, 2016). Thus, the cases the Legislators cite do not justify withholding the documents. Dk. 379 at 4–5.

not render them privileged. "[D]ocuments do not become cloaked with the lawyer-client privilege merely by the fact of their being passed from client to lawyer." *United States v. Robinson*, 121 F.3d 971, 975 (5th Cir. 1997). The documents are not categorically privileged. To the extent any document has annotations or notes implicating bona fide legal advice or containing privileged material, then the Legislators must produce a redacted version.

### 3. Logistical documents

The next group of documents contains calendar entries and other scheduling materials relating to redistricting. Dkt. 351-7 at 48. The United States argues these are categorically not privileged. Dkt. 351 at 5 (citing *Pic Grp. v. LandCoast Insulation, Inc.*, No. 1:09-cv-662, 2010 WL 1741703, at *2 (S.D. Miss. Apr. 28, 2010)). The Legislators disagree, contending such documents can be privileged when disclosure would "reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided." Dkt. 379 at 5 (quoting *Chaudhry v. Gallerizzo*, 174 F.3d 394, 402 (4th Cir. 1999)); *see Bernstein v. Mafcote, Inc.*, No. 3:12-cv-311 WWE, 2014 WL 3579522, at *7 (D. Conn. July 21, 2014); *see also, e.g.*, *Bretillot v. Burrow*, No. 14-cv-7633, 2015 WL 5306224, at *25 (S.D.N.Y. June 30, 2015) ("time records . . . contain[ed] privileged material"); *MacEachern v. Quicken Loans, Inc.*, No. 15-CV-12448, 2016 WL 3964814, at *3 (E.D. Mich. July 25, 2016) (similar); *Est. of Robles ex rel. Montiel v. Vanderbilt Univ. Med. Ctr.*, No. 3:11-0399, 2012 WL 3067936, at *3 (M.D. Tenn. July 27, 2012) (similar); *United States v. Heine*, No. 3:15-CR-238-SI, 2017 WL 1393493, at *5 (D. Ore. Apr. 11, 2017) (similar). The Legislators have also alerted the Court of their intention to promptly produce additional calendar entries that, upon further review, "disclose only public meetings information without internal annotations." Dkt. 379 at 6 n.3.

The Court agrees with the United States as to the broad inapplicability of privilege to these documents. The simplest solution is for the Legislators to produce redacted versions if any annotations implicate bona fide legal advice or contain privileged material.

### 4. Talking points

The next group of documents contains the so-called talking points the Legislators have withheld. Dkt. 351-7 at 49–50. The United States argues such documents are not protected by privilege where the party asserting it cannot show that the primary purpose of the communication was the transmission of legal advice. Dkt. 351 at 5 (citing *Havana Docks Corp. v. Carnival Corp.*, No. 19-CV-21724, 2021 WL 2940244, at *2, *4–5 (S.D. Fla. July 13, 2021)). The Legislators assert these talking points are privileged "where attorneys are involved in '[t]he review and editing of the draft' of talking points, [as] they reveal attorney-client advice no different than a legal memorandum sent from attorney to client." Dkt. 379 at 6 (quoting *In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2018 WL 10801570, at *3 (N.D. Ala. Jan. 29, 2018)). Further, the Legislators contend this is even more so when the talking points were intended to be "confidential" and for "internal use-only," thus showing "the desire to maintain the document's confidentiality and privileged nature." *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 660 (D. Nev. 2013).

The court agrees with the United States that these documents are not categorically privileged. To the extent any document has annotations or notes implicating bona fide legal advice or containing privileged material, then the Legislators must produce a redacted version.

### 5. Retention agreements

The fifth group of documents contains retention agreements and invoices related to legal services provided in connection with redistricting legislation. Dkt. 351-7 at 51–52. The United

States' position is these documents are not privileged as they merely describe "financial transactions between the attorney and client." Dkt. 351 at 5 (quoting *Davis*, 636 F.2d at 1043–44); *see also In re Grand Jury Subpoena*, 913 F.2d 1118, 1123 (5th Cir. 1990)); *Crum & Forster Specialty Ins. Co. v. Great W. Cas. Co.*, No. 3:15-cv-00325, 2016 WL 10459397, at *8 (W.D. Tex. Dec. 28, 2016). The Legislators argue that such documents can also be privileged when the correspondence "reveals the client's motivation for creating the relationship," possible litigation strategy, or "the nature of the services provided, such as researching particular areas of law." Dkt. 379 at 7 (quoting *In re Grand Jury Witness*, 695 F.2d 359, 362 (9th Cir. 1982)). To the Legislators, the particular label or purpose of a document as an engagement agreement or invoice is not dispositive of the privilege inquiry—what matters is whether the documents "reveal communications involved in the strategizing process," or other privileged legal advice. *Id.* (quoting *Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 537 (N.D. Ill. 2000)).

Notwithstanding the Legislators' ontological approach to privilege and the possible existence of protected information in these documents, the "identity of the client and the amount of the fee paid" are not protected. *In re Grand Jury Witness*, 695 F.2d 359, 361 (9th Cir. 1982). Such materials must still be produced. To the extent invoices include descriptions that implicate legal advice, redaction is the appropriate solution.

### 6. Documents not mentioning legal advice

The next group includes approximately 250 documents relating to redistricting proposals for the Texas House, "created, received, and/or gathered at Chairman Hunter's direction" containing some type of "input from attorneys" or "contributions from counsel." Dkt. 351-7 at 53–71.

The United States' position is these documents are not protected, not only because the entries say nothing of legal advice, but also because legislative attorneys frequently play both a legal and policy role. Dkt. 351 at 6; *see South Carolina v. United States*, No. 12-203, 2012 U.S. Dist. LEXIS 188558, at *12 (D.D.C. Aug. 10, 2012) (concluding that "attorney-client privilege does not apply in some instances to [state legislative] staff attorney work") (three-judge court); *see also BDO USA, L.L.P.*, 876 F.3d at 696. The United States qualifies its position, stating that to the extent the Legislators' failure to establish privilege is not alone sufficient to warrant disclosure, it admits *in-camera* review may be necessary to distinguish between documents providing only legal advice versus those that concern policy, political, or technical matters. Dkt. 351 at 6 n.2.

The Legislators respond that these documents fall squarely within the category of redistricting documents protected from disclosure so as to protect the communications between legislators and staff and allow "retained [counsel] to provide legal advice on redistricting."[9] Dkt. 394 at 8 (quoting *Perez v. Perry (Perez II)*, No. 11-cv-360, 2014 WL 3359324, at *1–2 (W.D. Tex. July 9, 2014)). The Legislators "retained counsel for legal advice on the innumerable legal compliance issues inherent in redistricting." *Id.* The withheld documents, they represent, are for the purpose of giving or obtaining legal advice or services. *Id.*

While this may well be true, attorney-client privilege does not categorically protect this trove of documents *merely* because they also contain staff attorney or retained counsel "contributions" or "input." Because the staff attorneys and retained counsel serve both legal and policy roles, it is incumbent upon the party seeking the privilege to prove it was for the primary purpose of securing either a legal opinion, legal services, or assistance in some legal proceeding.

---

[9] The parties have intertwined their arguments for this group and the next group—relating to Butler Snow— but for the sake of clarity the Court has separated the relevant arguments for each batch of documents. This separation is purely for simplification and does not affect the Court's ultimate analysis of privilege for each set of documents.

*BDO USA, L.L.P.*, 876 F.3d at 695. There has been no such showing here. To the extent such documents actually implicate legal advice, redaction is the appropriate solution.

### 7.   Communications with Butler Snow LLP and outside mapping consultants

Next are the documents relating to the Legislators' communication with outside counsel Butler Snow and outside mapping consultants. Dkt. 351-7 at 72–85, 86–91. The United States argues these communications are not necessarily privileged because the firm has a public-policy practice that provides legislative services, like "drafting and reviewing legislation of interest to clients," in addition to other practice areas. Dkt. 351 at 6 (quoting *Government Relations*, BUTLER SNOW, https://www.butlersnow.com/services/practiceareas/government-relations/ (last visited July 21, 2022)). In support, the United States also points to Chairman Hunter's comments that consultants retained by Butler Snow actually drafted portions of the House redistricting plan but that he still withheld 60 documents exchanged with these consultants on the basis of privilege. Dkt. 351 at 6.

The United States' position is that to the extent the Legislators withheld "political" or policy communications from Butler Snow, these documents are not protected. *Id.* (citing *Perez II*, 2014 WL 3359324, at *1–2); *see also, e.g.*, *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998); *South Carolina*, 2012 U.S. Dist. LEXIS 188558, at *5–8. Further, because the outside consultants provided "technical" advice, their communications are not protected from disclosure by attorney-client privilege or work-product doctrine. Dkt. 351 at 6–7 (citing *United States v. El Paso Cnty.*, 682 F.2d 530, 541–42 (5th Cir. 1982)); *see also Chemtech Royalty Assocs., L.P. v. United States*, No. 06-258, 2009 WL 854358, at *3–5 (M.D. La. Mar. 30, 2009); *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 303 (D. Md. 1992) (three-judge court)

(indicating that attorney-client privilege does not extend to "active participant[s] in the [redistricting] events").

The Legislators counter that the United States' comparison of outside counsel to legislative staff attorneys, as well as its citation to generic material on Butler Snow's website, is unconvincing. Dkt. 379 at 8. Further, they say the United States' own citation to Chairman Hunter's comments reveals that he had Butler Snow run both the "legal" and "data" analyses on the redistricting proposals. *Id.* Moreover, other remarks made on the House Floor clarify that the Legislators understood Butler Snow's role in advising to be giving *legal* advice on the bill. *Id.* (citing House Journal, October 16, at S213). The Butler Snow attorneys identified in the privilege logs, the Legislators add, further confirm their compliance role as these attorneys hold themselves out as "redistricting and voting rights" and "government litigation" counsel, distinct from purely governmental-relations counsel. *Id.* Further, the Legislators contend, privilege and work-product doctrines protect documents created and work done at the direction of counsel when such communications are kept confidential and in furtherance of the attorney-client relationship. *Id.*; *see also Ferko v. NASCAR*, 218 F.R.D.125, 139–40 (E.D. Tex. 2003) ("assistance by an accounting firm enables attorneys to 'give sound and informed advice'" and is protected (quoting *Upjohn Co.*, 449 U.S. at 30)); *In re Hardwood P-G, Inc.*, 403 B.R. 445, 458 (Bankr. W.D. Tex. 2009) ("communications to third party professionals" hired by attorney are protected).

In reply, the United States argues some communications between the Legislators and Butler Snow attorneys (as well as the consultants) are not protected by privilege because Butler Snow maintained an attorney-client relationship only with Chairman Hunter, his staff, and the House General Counsel. Dkt. 394 at 3 (citing Dkt. 390-2 at 8–9 (Butler Snow Engagement Letter)). Accordingly, the United States argues, the inclusion of additional legislators or staff on

communications meant that the communications were not confidential, and no attorney-client privilege or work-product protections existed. *Id.* So, too, lay unprotected the demographers' non-legal advice and consultation offered directly to the Legislators, unmediated by counsel. *Id.* (citing Dkt. 390-2 at 15–17 (Bryan Engagement Letter)); *see also* Dkt. 379 at 9 (conceding in their response brief that the demographers provided "technical" advice to the Legislators). In any case, the United States' position is that because Butler Snow and the demographers were "active participant[s] in the [redistricting] events"—and not merely consultants on legal compliance—their communications must be disclosed. Dkt. 394 at 3 (quoting *Marylanders for Fair Representation, Inc.*, 144 F.R.D. at 303); *see also Am. Elec. Power Co. v. Affiliated FM Ins. Co.*, No. CV 02-1133-D-M2, 2007 WL 9700756, at *4 (M.D. La. Apr. 9, 2007) (requiring production of "technical" communications); *Ferko*, 218 F.R.D. at 135 ("[A] lawyer may not render communications between the attorney's client and the accountant privileged just by placing an accountant on his or her payroll.").

The Legislators have shown these documents may well be privileged as containing legal advice. That these consultants assisted on "technical" matters does not categorically move their work beyond the scope of the attorney-client privilege. As the Legislators argue, such technical work may well have been necessary in reviewing the legality of the proposed legislation and compliance with the Voting Rights Act. Nevertheless, just because attorneys are involved in the process does not automatically shield the work of such technical experts, nor does it necessarily protect all communications between the parties. The documents must be produced to the Court for *in-camera* inspection.

### 8. Third-party documents

Finally, the United States argues a handful of communications with legislative outsiders withheld by the Legislators must be produced as "communications made in the presence of third parties" are not protected by privilege. Dkts. 351 at 7 (quoting *United States v. Pipkins*, 528 F.2d 559, 563 (5th Cir. 1976)); 351-7 at 92. If the Legislators oppose the release of these documents, the Court has found no mention of it in the response brief. Dkt. 379. Nevertheless, because some of the documents appear to potentially be communications between legislators, or their staff, and consultants or their attorneys, they may contain privileged attorney-client communications. Because this cannot easily be determined from the privilege logs, these documents will be treated like the Butler Snow and mapping-consultant documents above and should be produced to the Court for *in camera* inspection.

## C. Work-product protection

The United States next argues the Legislators' assertion of work-product protections for various groups of documents lacks merit because they cannot show the documents were created in anticipation of legislation. Dkt. 351 at 7. The specific arguments for each group of documents are discussed below.

### 1. Documents created during legislative proceedings

The first group the United States argues does not warrant work-product protection encompasses those documents created during legislative proceedings, such as draft redistricting legislation and hearing notes. Dkt. 351-7 at 93–153. The United States contends work-product protections do not cover materials created by attorneys or their agents "in the ordinary course of business, or pursuant to public requirements unrelated to litigation." Dkt. 351 at 7 (quoting *El Paso Cnty.*, 682 F.2d at 542). Further, that courts have declined to extend work-product protection to

documents "pertaining to pending legislation" because "[t]he [l]egislature could *always* have a reasonable belief that any of its enactments would result in litigation." *Bethune-Hill*, 114 F. Supp. 3d at 348 (internal quotation marks omitted).[10] The United States also notes that the Legislators did not initiate a litigation hold at the start of the 87th Legislature, evincing that litigation was not yet reasonably anticipated. Dkt. 394 at 4 (citing *Spanish Peaks Lodge, LLC v. Keybank Nat. Ass'n*, No. 10-cv-453, 2012 WL 895465, at *2 (W.D. Pa. Mar. 15, 2012)).

The Legislators respond that the United States' "categorical rule" that documents created during the legislative process are not protected perverts attorney-client privilege and work-product protections. Dkt. 379 at 10–11. Further, the Legislators contend that case law supports their contention that documents relating to legal compliance of redistricting proposals—or "documents created as part of assessing litigation risk"—are not categorically excluded from the work-product protection. *Id.*; *see also United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981) (asking whether "the primary motivating purpose behind the creation of the document was to aid in possible future litigation"). If the United States were correct, the Legislators argue, then legislators would have second-class status when it comes to obtaining legal advice and the associated protections accommodating the full and frank exchange of such advice for legislation—to the great detriment of the people then subject to the legislation. Dkt. 379 at 10.

The Court agrees with the United States. The "[i]nvolvement of counsel is not a guarantee that work-product protection will apply, although it may show that the pertinent documents were prompted by the prospect of litigation." 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER,

---

[10] *See also, e.g.*, *Ohio A. Philip Randolph Inst.*, 2018 WL 6591622, at *5 (declining to apply work-product protection to documents prepared because of "clients' statutory duty to draft Ohio's congressional map"); *D.G. ex rel. G. v. Henry*, No. 08-cv-74, 2010 WL 1257583, at *2 (N.D. Okla. Mar. 24, 2010) (declining to apply work-product protection to documents created to "aide [sic] the legislative process," even if "counsel may have [had] litigation in mind while drafting [them]").

FEDERAL PRACTICE & PROCEDURE § 2024 (3d ed. 2010). Instead, the "focus is on whether specific materials were prepared in the ordinary course of business, or were principally prompted by the prospect of litigation." *Id.* "If the document would have been created without regard to whether litigation was expected to ensue, it was made in the ordinary course of business and not in anticipation of litigation." *Mims v. Dallas Cnty.*, 230 F.R.D. 479, 484 (N.D. Tex. 2005). And as "the advisory committee notes to Rule 26(b)(3) make clear, . . . '[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation'" are not protected. *El Paso Cnty.*, 682 F.2d at 542.

"Even assuming that [the Legislators' documents] otherwise qualify for work product protection, we hold the doctrine unavailable here because the [documents] [were] not prepared 'in anticipation of litigation.'" *Id.* The Court "concede[s] that determining whether a document is prepared in anticipation of litigation is a slippery task," but we are guided by circuit precedent requiring that the anticipation of litigation be the *primary* motivating purpose to qualify for work-product protection. *Id.* at 542–43 (citing *Davis*, 636 F.2d at 1040)). The Legislators have not shown that these documents were created outside of the ordinary course of business or that such dual-purpose documents were created for the primary purpose of the anticipation of litigation. Accordingly, these documents are without protection from the work-product doctrine and must be produced.

## 2. Documents not described as having been created in anticipation of litigation

The Legislators add no additional arguments in support of their assertion of work-product protection for documents not described as having been created in anticipation of litigation. Dkt. 351-7 at 154–215. Because the Court has already reviewed the general arguments and found them wanting, these documents are afforded no work-product protections. They must be produced.

### 3. Documents relating to outside counsel and map-drawers

The United States argues that documents relating to outside counsel and map-drawers are outside the protections of the work-product doctrine. Dkt. 351-7 at 216–31. As the United States contends, the Legislators' use of outside counsel as an insulating layer between the Legislature and outside map-drawers suggests that "relevant and non-privileged facts remain hidden" and that "production of those facts is essential" to this litigation. Dkt. 351 at 8 (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)). Their position is that documents produced by attorneys during the legislative process—and their non-attorney consultants—should be produced. *Id.*

The Legislators rely primarily on their arguments made for documents related to legislative proceedings. *See supra* III.C.1; Dkt. 379 at 10. Having already found this line of reasoning unpersuasive, the Court finds these documents are not categorically shielded by work-product doctrine simply because outside counsel is involved; nor have the Legislators shown these documents were created outside of the ordinary course of business or that their primary purpose was in anticipation of litigation. Nevertheless, these documents are potentially sensitive because they may reveal privileged attorney-client communications; as such, they require individual scrutiny. Accordingly, the documents must be produced to the Court for *in-camera* inspection.

### 4. Remaining documents

Because the Court has already addressed the rationale for finding attorney-client privilege broadly inapplicable to documents containing factual matter, *see supra* III.B.1., we will not revisit the arguments here as the Legislators add nothing new in support of their work-product-doctrine argument as to this specific group of documents. The documents described as containing factual matter indexed in Docket No. 351-7 at 232–55 are not protected by the work-product doctrine and will be produced.

The same holds true for logistical documents indexed in Docket No. 351-7 at 256. To the extent any such calendar entries or scheduling materials contain annotations that implicate bona fide legal advice or contain privileged material, then the Legislators will produce a redacted version.

So, too, for the talking points documents identified in Docket No. 351-7 at 257–58. The Court has already found attorney-client privilege does not shield these documents from protection. Having reviewed and found wanting the Legislators' general arguments for the application of work-product protection above, these documents will be produced.

The retention agreements and invoices indexed at Dkt. 351-7 at 259 will be produced. To the extent invoices include descriptions that implicate legal advice, redaction is the appropriate solution. The same applies to documents and data created, received, and gathered for redistricting purposes. Dkt. 351-7 at 260–81.

The third-party documents, Dkt. 351-7 at 282–87, however, may contain protected information as they relate to documents sent between legislators, their staff, outside counsel, and outside consultants. Because these documents are potentially sensitive, they require *in-camera* inspection similar to the Butler Snow documents discussed in subsection III.C.3, *supra*.

Finally, the documents drafted years before the Legislators were notified of potential litigation over the 2021 plans, Dkt. 351-7 at 288–90, are not protected by the work-product doctrine in this case. *See Marquette Transp. Co., LLC v. M/V CENTURY DREAM*, No. CV 16-522, 2017 WL 11536184, at *1 (E.D. La. Jan. 4, 2017) (ordering the production of documents, including "documents [] prepared two to three years before the subject incident and [which] cannot possibly be work product"). Nevertheless, the Legislators identify two arguments that militate against production for two subsets of the documents: (1) the first tranche came from the Texas Legislative

Council, with which the Legislators maintain a legislatively privileged and attorney-client privileged relationship; and (2) the second tranche is associated with past redistricting plans, some with legislatively privileged annotations as such documents are revealing of the legislative fact-gathering process for the 2021 legislation and "are thus legislatively privileged." Dkt. 379 at 15 n.9. The first tranche, because it potentially contains privileged communications between attorney and client, will be produced to the Court for *in-camera* inspection. The second tranche, dealing with legislatively privileged documents, will be produced in light of the Court's ruling on disclosure discussed in subsection III.A.3, *supra*.

## IV.    CONCLUSION

For all the reasons above, the United States' motion to enforce third-party subpoenas *duces tecum*, Dkt. 351, is GRANTED.

The Legislators are hereby ORDERED to produce documents relating to underlying facts concerning the 2021 Texas State House Redistricting Plan and the 2021 Texas Congressional Redistricting Plan, including those set forth on pages 1–25, 232–255, and 315–356 of the Challenged Document Index, Dkt. 351-7.

The Legislators are hereby ORDERED to produce logistical documents, such as calendar entries and other scheduling materials; talking points; and retainer agreements and invoices, including those set forth on pages 48, 49–50, 51–52, 256, 257–58, 259, 303–09, and 311–14 of the Challenged Document Index.

The Legislators are hereby ORDERED to produce documents over which attorney-client privilege is asserted but whose privilege log entries do not specify that legal advice was sought or provided, including those set forth on pages 26–47 and 53–71 of the Challenged Document Index, to the extent no other privilege validly applies under the terms of this Order.

The Legislators are hereby ORDERED to produce to the Court for *in-camera* inspection documents over which attorney-client privilege or work-product protection is asserted that involve legislative attorneys, Butler Snow attorneys, the map drawing consultants hired by Butler Snow, or other third parties, including those set forth on pages 72–85, 86–91, 92, 216–31, and 282–87 of the Challenged Document Index.

The Legislators are hereby ORDERED to produce documents over which work-product protection is asserted that were created in the ordinary course of legislative business, including those set forth on pages 93–153 and 260–81 of the Challenged Document Index, to the extent no other privilege validly applies under the terms of this Order.

The Legislators are hereby ORDERED to produce documents over which work-product protection is asserted that were drafted years before litigation in this case was anticipated, including those set forth on pages 288–90 of the Challenged Document Index, to the extent no other privilege validly applies under the terms of this Order.

The Legislators are hereby ORDERED to produce documents over which work-product protection is asserted but whose privilege log entries do not state that they were created in anticipation of litigation, including those set forth on pages 154–215 of the Challenged Document Index, to the extent no other privilege validly applies under the terms of this Order.

The Legislators are hereby ORDERED to produce documents over which legislative privilege is asserted that involve communications with non-legislative outsiders, including those set forth on pages 291–301 of the Challenged Document Index, to the extent no other privilege validly applies under the terms of this Order.

The Legislators are hereby ORDERED to produce documents over which legislative privilege is asserted that are not related to legislation, like draft public statements and media

strategy documents; documents created after the enactment of the 2021 redistricting legislation; and employment communications, including those set forth on pages 303–09, 310, and 311–14 of the Challenged Document Index, to the extent no other privilege validly applies under the terms of this Order.

The Legislators are hereby ORDERED to produce documents over which legislative privilege is asserted that relate to the 2021 Congressional Redistricting Plan, including those set forth on pages 357–62 of the Challenged Document Index, to the extent no other privilege validly applies under the terms of this Order.

The Legislators are ORDERED to produce documents over which the deliberative process privilege is asserted, including the document set forth on page 302 of the Challenged Document Index, to the extent no other privilege validly applies under the terms of this Order.

To the extent any document—excluding any ordered produced for *in-camera* inspection—has annotations or notes implicating bona fide legal advice or containing privileged material, then the Legislators will produce a redacted version.

The Legislators are hereby ORDERED to produce these documents within 7 days of this Order.

**So ORDERED and SIGNED this 25th day of July 2022.**

_____
**DAVID C. GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**

*And on behalf of:*

**Jerry E. Smith**                          **Jeffrey V. Brown**
**United States Circuit Judge**     *-and-*     **United States District Judge**
**U.S. Court of Appeals, Fifth Circuit**        **Southern District of Texas**